CORRIGAN, J.
(dissenting). The majority holds that the sentencing court erred by scoring 10 points for offense variable (OV) 9 (number of victims), MCL 777.39, because the collision of defendant’s getaway vehicle into a fence during a police chase occurred after the definitional elements of his offense, breaking and entering a building with intent to commit larceny, MCL 750.110, were completed. The majority thus reverses the judgment of the Court of Appeals and remands the case for resentencing.
I respectfully dissent for three reasons:
(1) Defendant waived his challenge to the scoring of OV 9 when his attorney stated at sentencing that the guidelines minimum sentence ranges for his offenses “appear to be correct.”
(2) Defense counsel was not ineffective in agreeing with the guidelines calculations because the caselaw in effect at the time of sentencing supported the OV 9 score.
(3) In any event, the sentencing court did not err in scoring OV 9. The record supported the court’s finding that two persons were placed in danger of injury when defendant’s getaway vehicle crashed into a fence. In prohibiting consideration of defendant’s escape attempt, the majority invents a new “elements-only” test for scoring the offense variables. This new rule artificially confines the duration of an offense to its definitional elements for the purpose of sentencing. This unprecedented approach to scoring the sentencing guidelines disregards the well-established res gestae principle that looks to the entire transaction or uninterrupted chain of events surrounding the commission of an offense.
*137 The practical consequences of this new rule should not be underestimated. The majority today severely impairs the ability of sentencing courts to assess the seriousness of an offense when scoring the offense variables. No longer will a court ever be able to consider aggravating facts and circumstances that occur after the elements of the offense have been met.
Consider, for example, a defendant who breaks into a woman’s home, rapes her, and then, immediately after the rape, severely beats her and threatens her with a knife he found in her home. The defendant is convicted of first-degree criminal sexual conduct. Under today’s decision, the defendant cannot be assessed any points under OV 1, MCL 777.31, for his use of the knife, under OV 3, MCL 777.33, for the injuries that the victim suffered during the beating, or under OV 7, MCL 777.37, for the aggravated physical abuse of the victim because all these actions, while part of the same criminal event as the rape, occurred after the rape was completed.
Or to take another example, suppose a defendant kills a young woman, dismembers her body, and then, three days later, sends photographs of the dismembered body parts to the victim’s parents, which requires them to undergo psychological counseling as a result of seeing the photographs. The defendant is convicted of first-degree murder. Under the majority’s new elements-only rule, the court cannot assess any points under OV 5, MCL 777.35, for the parents’ serious psychological injuries because the elements of first-degree murder were completed before the defendant dismembered the body and sent the photographs to the parents. The majority’s new rule will thus prevent courts from assessing the true seriousness of an offense when scoring the guidelines to determine the appropriate minimum sentence.
*138 i. waiver
Waiver is the intentional relinquishment or abandonment of a known right. People v Carter, 462 Mich 206, 215; 612 NW2d 144 (2000). It differs from forfeiture, which is the failure to timely assert a right. Id. A waiver extinguishes the alleged error, thus foreclosing appellate review. Id. at 215, 219. In Carter, we held that no reviewable error existed because defense counsel had “clearly expressed satisfaction with the trial court’s decision to refuse the jury’s request [to rehear testimony] and its subsequent instruction.” Id. at 219.
Here, the court asked defense counsel at sentencing if he had received the sentencing information report indicating a guidelines minimum sentence range of 29 to 114 months. Defense counsel responded, “Yes, Judge, and they appear to be correct.” Defendant did not take issue with counsel’s statement. Thus, the record reflects that the defense expressed satisfaction with the guidelines range, the calculation of which included the scoring of OV 9 that defendant now challenges on appeal. Because the issue has been waived, the alleged error is extinguished, foreclosing appellate review. Id. at 215, 219.
The majority’s reliance on defendant’s motion for resentencing as a basis to review the alleged error reflects a misunderstanding of the distinction between waiver and forfeiture. Although a motion for resentencing may preserve a claim and thus avoid forfeiture, defendant here had already waived the alleged error at sentencing, thus extinguishing it before the motion for resentencing was filed. We have never held that an extinguished error could be revived in the manner suggested by the majority; indeed, creating a new “revival of waived errors” rule would significantly erode the distinction between waiver and forfeiture explained in Carter.
*139 The majority also errs by stating that “[b]ecause the prosecution failed to raise the issue of defendant’s waiver, we need not consider it.” Ante at 131 n 36. An appellee is not required to file a cross-appeal raising the issue of forfeiture or waiver. On the contrary, an appellant’s argument on each issue must include a statement of the applicable standard or standards of review. MCR 7.212(C)(7); MCR 7.306(A). A defendant’s waiver or forfeiture of an issue will affect the availability of or the standard of review for that issue. Thus, preservation, including forfeiture and waiver, is a threshold question that inheres in every issue raised on appeal and must be considered by an appellate court. The majority’s novel view that an appellee must file a cross-appeal to challenge the preservation of an issue thus lacks any basis in our court rules or caselaw, and it would increase dramatically the number of criminal appeals filed in our court system.
Moreover, if, under today’s decision, an appellee is now required to raise the argument that the appellant waived a substantive issue, then is the appellant required to raise the argument that the appellee waived the waiver issue? The majority’s decision essentially creates a potentially infinite spiral of waivers with no logical stopping point. What principle guides the majority in choosing to end this spiral at the point where the appellee but not the appellant is responsible for raising the issue? It is, after all, by definition the appellant who generally advances issues on appeal. The majority’s arbitrary and unexplained assignment of responsibility to the appellee distorts the usual appellate burden and is most troubling.
Nor is it clear how the majority can avoid addressing whether the substantive issue was waived if, as we held in Carter, a waived error is extinguished. The truly *140 illogical nature of the majority’s action should not go unmentioned: the majority reverses the judgment of sentence on the basis of an “error” while refusing even to consider whether that “error” was extinguished. How can the majority reverse because of an error while dodging the question whether that very error even exists?
Further, the majority cites Mitcham v Detroit, 355 Mich 182, 203; 94 NW2d 388 (1959), for the proposition that the “[fjailure to brief an issue on appeal constitutes abandonment.” Ante at 131 n 36. But in Mitcham, this Court was referring to an appellant’s failure to brief an issue in a civil case, not to an appellee’s failure to discuss an issue in response.[1]
Indeed, this Court expressly declined to apply the Mitcham abandonment rule to an appellee in a criminal case. In People v Smith, 439 Mich 954 (1992), this Court vacated the portion of a Court of Appeals judgment that reversed a defendant’s convictions on the ground that the prosecution had confessed error by failing to file a brief. This Court explained:
A party who seeks to raise an issue on appeal but who fails to brief it may properly be considered to have abandoned the issue. Mitcham v Detroit, 355 Mich 182, 203 (1959). However, the failure of an appellee to file a responsive brief may not properly be considered to be a confession of substantive error. [Id. (emphasis added).]
If, as this Court held in Smith, an appellee’s failure to file a brief altogether does not constitute a confession of *141 error, then it follows that an appellee’s filing of a brief that does not address a particular issue also is not a confession of error. The majority essentially overrules Smith by indirection without acknowledging that it is doing so.
The majority’s new “appellee waiver” rule not only distorts our caselaw, but may also have very serious real-world consequences for our state’s criminal justice system in these difficult economic times. Apparently because of budget constraints, the prosecution does not file appellee briefs in 19 percent of the criminal appeals in the Court of Appeals. Yet the majority now punishes the people of this state for failing to file a brief by creating what amounts to an automatic rule of reversal in one-fifth of the criminal appeals in our state.
Indeed, the dissenting judge in the Court of Appeals in Smith noted this very concern by explaining that reversing a conviction on the ground that the prosecution had not filed a brief “would result in the unnecessary reversal of validly obtained convictions” and “would constitute an even greater waste of this state’s already taxed law enforcement, prosecutorial, and judicial resources than that occasioned by this Court’s review of both sides of an issue on appeal.” People v Smith, 190 Mich App 352, 359; 475 NW2d 857 (1991) (DANHOF, C.J., dissenting).
An appellate court is obligated to articulate and apply the governing legal principles correctly regardless of whether the parties or lower courts have done so. That is why an appellate court will affirm a lower court’s judgment if it reached the correct result albeit for the wrong reason. See, e.g., American Alternative Ins Co, Inc v York, 470 Mich 28, 33; 679 NW2d 306 (2004) (“The trial court and the Court of Appeals applied the wrong legal standards. However, because the Court of Appeals *142 reached the correct result, we affirm the Court of Appeals decision for the reasons stated herein.”).
The majority’s decision subverts this fundamental duty by declining to apply the waiver principles explicated in Carter. We should not pretend that no waiver occurred merely because the prosecution’s responsive brief did not correctly articulate the appropriate manner to resolve the issues raised on appeal.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
Defendant argues that his trial counsel rendered ineffective assistance, but the majority does not analyze this issue under the two-part test for ineffective assistance of counsel set forth in Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To satisfy the Strickland standard, a defendant bears a heavy burden to show that counsel made errors so serious that he was not performing as the counsel guaranteed by the Sixth Amendment, and the defendant must overcome a strong presumption that counsel’s performance constituted sound trial strategy. Moreover, the defendant must establish prejudice, i.e., a reasonable probability that but for counsel’s error, the result of the proceeding would have been different. See People v Dendel, 481 Mich 114, 124-125; 748 NW2d 859 (2008); People v Pickens, 446 Mich 298, 302-303; 521 NW2d 797 (1994).
The majority does not explain whether, and if so, why, it believes defendant has met the heavy burden required to establish ineffective assistance of counsel. In any event, counsel’s acquiescence in the scoring of OV 9 was not an error at all, let alone an error so serious as to deprive defendant of the counsel guaranteed by the Sixth Amendment. At the time of sentencing, the existing caselaw provided that a defendant’s conduct during *143 the continuum of events surrounding the offense could be considered in scoring the offense variables. See People v Cook, 254 Mich App 635, 641; 658 NW2d 184 (2003) (“[W]here the Legislature has not precluded it, we find that where the crimes involved constitute one continuum of conduct, as here, it is logical and reasonable to consider the entirety of defendant’s conduct in calculating the sentencing guideline range with respect to each offense.”); People v Chesebro, 206 Mich App 468, 471; 522 NW2d 677 (1994) (stating that when scoring OV 6 of the former judicial guidelines, which corresponded with current OV 9, victims involved in the transaction giving rise to the conviction may be considered).
At the time of sentencing, counsel could not have known that the then-controlling caselaw would be swept aside by the majority’s new rule confining the scoring of offense variables to the definitional elements of the sentencing offense. The failure to anticipate a change in the law generally does not constitute ineffective assistance of counsel. Mullican v United States, 469 F Supp 2d 498, 504 (ED Tenn, 2007), citing Brunson v Higgins, 708 F2d 1353, 1356 (CA 8, 1983); see also Lucas v O’Dea, 179 F3d 412, 420 (CA 6, 1999) (“Only in a rare case will a court find ineffective assistance of counsel based upon a trial attorney’s failure to make an objection that would have been overruled under the then-prevailing law.”) (quotation marks omitted); Kornahrens v Evatt, 66 F3d 1350, 1360 (CA 4, 1995) (“Based on this clear precedent, we cannot say that, under the facts of this case, [counsel’s] trial performance was constitutionally deficient because he followed a long-standing and well-settled rule of South Carolina criminal law — even when that rule was under attack in the United States Supreme Court at the time of trial”) (emphasis added).
*144 Thus, counsel’s acquiescence in the scoring of OV 9 does not satisfy the deficient performance prong of Strickland. The failure to anticipate that this Court would one day invent an elements-only test for scoring offense variables in contravention of caselaw in effect at the time of sentencing does not constitute ineffective assistance of counsel.
III. WHEN IS THE SENTENCING OFFENSE COMPLETED?
The majority’s central holding is that a defendant’s conduct occurring after an offense is completed may not be considered in scoring the offense variables unless the statutory provision for a particular variable instructs otherwise. The central flaw in the majority’s analysis is that it completely begs the question of when an offense is completed. Indeed, the majority expressly avoids this question in this case, providing only an amorphous analysis regarding whether the challenged conduct was “far beyond and removed” from the underlying offense. Ante at 135 n 45. Rather than permitting sentencing courts to analyze the res gestae of a sentencing offense as we do in other contexts, the majority artificially limits consideration of the offense to its definitional elements. Not once does the majority even attempt to explain why or on what authority it has imposed this limitation.
The majority’s new elements-only rule has no basis in Michigan caselaw. In Chesebro, the Court of Appeals held that only victims involved in the transaction underlying the sentencing offense could be considered in scoring OV 6 of the former judicial guidelines:
We think the rule that more accurately applies the sentencing guidelines is that the offense variables are to be scored only with respect to the specific criminal transaction that gives rise to the conviction for which the defendant is *145 being sentenced unless the instructions for a variable specifically and explicitly direct the trial court to do otherwise. [Chesebro, supra at 471 (emphasis added).]
We analyzed scoring decisions under OV 9 of the current legislative sentencing guidelines in People v Morson, 471 Mich 248; 685 NW2d 203 (2004), and People v Sargent, 481 Mich 346; 750 NW2d 161 (2008). In Morson, the defendant’s accomplice committed an armed robbery against Deborah Sevakis. A bystander, James Bish, was shot while chasing the accomplice after the elements of armed robbery were completed. This Court held:
Defendant was assessed ten points by the sentencing court for two victims: Deborah Sevakis and James Bish. The Court of Appeals reversed that determination by the sentencing court, concluding that Sevakis was the only victim of the armed robbery. We disagree with the Court of Appeals and therefore reverse its conclusion regarding OV 9.
Pursuant to the plain language of the statute, the sentencing court is to count “each person who was placed in danger of injury or loss of life” as a victim. Though Sevakis was the only person actually robbed, Bish, who was standing nearby and responded to Sevakis’s call for help, was also “placed in danger of injury or loss of life” by the armed robbery of Sevakis. Consequently, the sentencing court properly counted Bish as a victim and properly scored defendant under OV 9. [Morson, supra at 261-262.]
Although Justice YOUNG dissented on other issues in Morson, he agreed with the majority’s analysis of OV 9:
I agree with the majority that the trial court did not err when it assessed ten points for offense variable (OV) 9. The language of MCL 777.39(2)(a) clearly states that each person “placed in danger of injury or loss of life” is to be counted as a victim. Because a gun was fired at him, James Bish was placed in danger even if he had not intervened or *146 been injured. [Id. at 277 (YOUNG, J., concurring in part and dissenting in part) (second emphasis added).]
Thus, all persons placed in danger during the course of a crime are properly counted as victims for the purposes of OV 9.
Nothing in Morson suggests that only the definitional elements may be used in scoring the offense variables. On the contrary, conduct that occurred after the elements were satisfied supported the OV 9 scoring decision. Thus, Morson supports the conclusion that every person placed in danger during the criminal event may count as a victim under OV 9.[2]
In Sargent, a criminal sexual conduct case, the sentencing court assessed 10 points for OV 9 on the basis that there were two victims: the complainant and her sister, whom the defendant had sexually abused previously. In a unanimous decision, this Court remanded for resentencing because the abuse of the complainant’s sister was not part of the sentencing offense transaction and only conduct relating to the offense could be considered when scoring the offense variables.
We explained in Sargent that the offense variables are generally offense specific because their primary focus is the nature of the offense. We quoted several provisions that focused on “the offense” for purposes of scoring the guidelines. Sargent, supra at 348. We also noted that MCL 769.31(d) defines “offense characteristics” as “the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate.” Id. Thus, we held, only conduct “relating to the offense” may be *147 considered when scoring the offense variables. Id. at 349. This conclusion was reinforced by the fact that the statutes for some offense variables specifically provide for considering factors unrelated to the offense being scored. Id. at 349-350. We thus concluded that “only conduct that relates to the offense being scored may be considered.” Id. at 350.
We then stated that “when scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered.” Id. Noting that the jury did not convict the defendant of abusing the complainant’s sister and that the abuse of the sister did not arise out of the same transaction as the abuse of the complainant, we concluded that zero points should have been assessed for OV 9. Id. at 351.
And as discussed, Court of Appeals caselaw applying the legislative guidelines also suggests that the entire criminal transaction may be considered in scoring the offense variables. In Cook, the defendant challenged the use of his conduct in fleeing the police to assess 10 points for OV 19 (interference with the administration of justice) when calculating his minimum sentence for assault with intent to do great bodily harm less than murder. The defendant argued that his flight from the police did not occur during the assault. The Court of Appeals found no basis for the defendant’s argument in the plain language of the statute.
In drafting the sentencing guidelines scoring instructions, the Legislature could have expressly prohibited sentencing courts from considering facts pertinent to the calculation of the sentencing guidelines range for one offense from being also used to calculate the sentence guidelines range for another offense, but it did not do so. Moreover, where the Legislature has not precluded it, we *148 find that where the crimes involved constitute one continuum of conduct, as here, it is logical and reasonable to consider the entirety of defendant’s conduct in calculating the sentencing guideline range with respect to each offense. Thus, the trial court did not err in scoring ten points under OV 19 for defendant’s assault conviction. [Cook, supra at 641 (emphasis added).]
See also People v Gullet, 277 Mich App 214, 218; 744 NW2d 200 (2007) (holding that the sentencing court had improperly “looked beyond the criminal transaction that supported the conviction when it scored 10 points for OY 9”).
In short, all these cases support the conclusion that a court may consider the criminal transaction when scoring the offense variables. Until today’s decision, a sentencing court was never required to confine its analysis only to the definitional elements of the sentencing offense.
More broadly, the res gestae concept is deeply embedded in our caselaw. For example, in People v Gillis, 474 Mich 105, 109; 712 NW2d 419 (2006), we held that in felony murder, a defendant’s “perpetration” of the predicate felony includes acts that occur outside the definitional elements but during “the unbroken chain of events surrounding that felony.” “Because defendant at the time of the collision was attempting to escape detection after having been identified during the home invasion, a reasonable juror could conclude that he was still ‘in the perpetration of. the home invasion.” Id.
Although the analysis in Gillis hinged in part on the definition of “perpetration” in the first-degree murder statute, a term that is not used in the offense variable provisions, it is nonetheless useful in demonstrating that an offense may remain ongoing after the completion of the definitional elements. We noted in Gillis that *149 the “commission of the felony itself does not render the defendant’s criminal plan complete. When a defendant plans to commit a felonious act, it is ‘a legitimate assumption that. . . [the defendant] also planned to escape from the scene of his crime.’ ” Id. at 115-116 (citation omitted). We noted that “escape is ‘as important to the execution of the [felony]’ as the elements of the crime itself.” Id. at 116 (citation omitted).
In other words, a felon has not “carried out” or “completed” the felony for felony-murder purposes until the felon has escaped. A murder committed during the attempt to escape is committed “in the perpetration of” that felony, because the felonious transaction has not yet been completed. Accordingly, “perpetration” includes not only the definitional elements of the predicate felony, but also includes those acts that are required to complete the felony — such as those that occur after the commission of the predicate felony while the felon is attempting to escape ....
“A burglar may be said to be engaged in the commission of the crime of burglary while making away with the plunder, and while engaged in securing it. So, a robbery within the meaning of a rule that a homicide committed in the perpetration of a robbery is murder in the first degree is not necessarily concluded by the removal of the goods from the presence of the owner; and it is not necessary that the homicide should be committed at the precise time and place of the robbery. As in the case of burglary, the robber may be said to be engaged in the commission of the crime while he is endeavoring to escape and make away with the goods taken.” [Id. at 116-117, 120, quoting Wharton, Law of Homicide (3d ed), § 126, p 186) (emphasis added).]
In short, under the res gestae rule, a murder that occurs during the “unbroken chain of events surrounding the predicate felony” is committed in the perpetration of that felony. Gillis, supra at 121. Time, place, *150 causation, and continuity of action determine whether the murder occurred in perpetration of the predicate felony. Id. at 127.
Moreover, this Court’s use of the res gestae principle is not limited to the felony murder context. It is firmly rooted in our caselaw and used to describe not only the elements of the offense, but also the body of facts necessary to prove and support those elements. See, e.g., People v Kayne, 268 Mich 186; 255 NW 758 (1934); People v Sholl, 453 Mich 730; 556 NW2d 851 (1996). A leading treatise concisely explains the res gestae principle:
The res gestae includes circumstances, facts and declarations which grow out of the main fact, contemporaneous with it, and serve to illustrate its character. Normally facts and circumstances surrounding the commission of a crime are properly admissible as part of res gestae; however, use of testimony by the prosecutor to create prejudicial inferences unsupported by evidence is improper.
No inflexible rule has ever been, and probably one can never be adopted as to what is a part of the res gestae. It must be determined largely in each case by the peculiar facts and circumstances of the case, but it may be stated as a fixed rule that included in the res gestae are the facts which so illustrate and characterize the principal fact as to constitute the whole of one transaction. So long as a transaction continues, so long do acts and deeds emanating from it became [sic] a part of it, they may be described in a court of justice. There is no limit of time within which the res gestae can be arbitrarily confined. [1A Gillespie, Michigan Criminal Law and Procedure, § 18:72, pp 445-446.]
In light of our well-established caselaw addressing res gestae, I cannot discern why this Court should now invent a wholly different rule for determining when an offense is complete for purposes of applying the offense variables. Even accepting, as we stated in Sargent, that *151 the offense variables are offense specific and that the focus must be on the nature of the sentencing offense, the majority fails to explain why only the definitional elements may be considered. If, as we stated in the felony murder context, a felony is ongoing and not yet complete while the felonious transaction continues, then why cannot a sentencing court consider the full continuum of a defendant’s conduct during that transaction for the purpose of scoring the offense variables? Further, in relation to any offense, the court will have already heard the entire res gestae of the crime during the trial or other proceedings and should be allowed to consider those aggravating and mitigating factors affecting the seriousness of the offense when relevant to scoring particular variables.
The elements are traditionally used to determine whether the prosecution has presented sufficient evidence to support a charge or a conviction, not to define the res gestae of the offense. Indeed, the majority’s new rule collapses the duration of a criminal offense so that it begins and ends at precisely the same instant. A prosecutor cannot charge a crime until the last element has been completed. At the most, a prosecutor could charge only for an attempt if all the elements have not been completed. Yet under the majority’s opinion, the crime also stops immediately upon the completion of the elements. That is, at the precise moment the crime can be charged, the majority would stop the clock for the purpose of scoring the sentencing guidelines. Why?
As we explained in Sargent, MCL 769.31(d) defines “offense characteristics” as “the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate.” (Emphasis added.) In contravention of the statute and our analysis in Sargent, the majority now limits *152 consideration to the elements and requires courts to ignore any other facts and circumstances “relating to the offense” that occur during the res gestae of the crime.
Not once does the majority even attempt to explain why or how it has reached the remarkable conclusion that a defendant’s flight from the scene of the crime is not an “aggravating. . . factorO relating to the offense . . . .” Instead, the majority simply gives no effect to the portion of the statute that does not support its new standard, focusing only on the reference to “the elements of the crime” while disregarding the phrase “and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate.” MCL 769.31(d).
The majority’s suggestion that it can ignore defendant’s escape attempt because defendant was not convicted of fleeing and eluding reflects a mistaken understanding of MCL 769.31(d). Again, that statute defines “offense characteristics” as
the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate. For purposes of this subdivision, an offense described in ... MCL 791.233b, that resulted in a conviction and that arose out of the same transaction as the offense for which the sentencing guidelines are being scored shall be considered as an aggravating factor.
This provision requires that certain offenses that result in a conviction must be considered as aggravating factors. But contrary to the majority’s suggestion, it does not say that other contemporaneous offenses that do not result in a conviction or that are not listed in MCL 791.233b cannot be considered as aggravating factors.
*153 Next, it is true, as we stated in Sargent, that some of the offense variable provisions expressly require consideration of facts that are not offense specific. But most of the examples cited contemplate consideration of events falling not only outside the definitional elements of the sentencing offense, but outside the criminal transaction itself. Thus, the statutory provisions for those offense variables would not be nullified by considering the criminal transaction in scoring all offense variables. And although OV 14 (leader in a multiple offender situation) does expressly refer to the “entire criminal transaction,” MCL 777.44(2)(a), this language merely emphasizes the broader focus when the defendant is a leader of other offenders. In other words, the reference to the “entire criminal transaction” in this provision merely reflects that OV 14 uniquely pertains to multiple offender situations.
Moreover, the majority’s elements-only test violates the very purpose of the sentencing guidelines: to promote uniformity and consistency in sentencing.[3] To that end, we have held that departure from the guidelines recommended minimum sentence range is meant to be the exception, not the rule.3 [4] Despite this well-established standard and without acknowledging the inconsistency created, the majority states that the trial *154 court may consider factors within the criminal transaction but outside the elements when departing from the guidelines range. This reasoning is simply unsupported by the law of this state.
Indeed, those justices in the majority in this case who were also in the majority in People v Smith, 482 Mich 292; 754 NW2d 284 (2008), have failed to explain their inconsistent positions. Contrary to the analysis in Smith, the majority today suggests that sentencing courts should depart freely from the guidelines recommended range by considering factors outside the elements of the offense that may not be considered when scoring the offense variables. This invitation to depart more readily from the guidelines will likely cause a dramatic increase in the number of sentencing appeals, which our appellate courts will have to review under the rigid framework demanded by Smith.
In this case, I would hold that defendant was properly assessed 10 points for OV 9. Defendant argues that even if his escape attempt were to be considered, his accomplices could not be considered victims for the purpose of scoring OV 9. But the version of MCL 777.39(2)(a) applicable in this case stated: “Count each person who was placed in danger of injury or loss of life as a victim.” (Emphasis added.) Defendant’s accomplices occupied the car that crashed into a fence during a police chase, obviously putting them in danger of physical injury. “Each person” is not a difficult phrase to understand, and it does not exclude accomplices. A person’s guilt or innocence does not affect whether that person was placed in danger.
Defendant further contends that no evidence existed that he was driving the getaway vehicle when it crashed into the fence. The police officer, however, saw a person with light hair inside the fleeing vehicle, and defendant *155 had red hair, which could be viewed as light.[5] In any event, defendant at the very least aided and abetted the escape attempt, and he cannot now avoid responsibility for participating in the flight from the police that led to the crash into a fence.
IV CONCLUSION
Accordingly, I would affirm the judgment of the Court of Appeals. Defendant waived his claim that OV 9 was incorrectly scored when his attorney conceded at sentencing that the guidelines minimum sentence ranges for his offenses “appear to be correct.” Counsel was not ineffective in making this concession, given that the caselaw in effect at the time of sentencing supported the OV 9 score. Finally, the majority’s new elements-only rule for scoring offense variables has no basis in our caselaw. The Court of Appeals properly considered the entire res gestae of the sentencing offense in concluding that the evidence supported the scoring decision.
Weaver and Young, JJ., concurred with Corrigan, J.

 Similarly, the majority’s citation of Gross v Gen Motors Corp, 448 Mich 147, 162 n 8; 528 NW2d 707 (1995), and Dwelley v Tom McDonnell, Inc, 334 Mich 229, 233; 54 NW2d 217 (1952), for the proposition that “a party is bound to the theory on which the cause was prosecuted or defended in the court below” is erroneous because neither Gross nor Dwelley suggested that an appellee’s failure to address an issue correctly in a responsive brief precludes an appellate court from addressing the issue.

 Then-Justice Kelly and Justice Cavanagh were in the majority in Morson, yet they make no attempt to explain their sudden change of opinion here.

 See People v Smith, 482 Mich 292, 311-312 & n 46; 754 NW2d 284 (2008); former MCL 769.33(l)(e)(¿u), as added by 1994 PA 45 (providing that one of the Sentencing Commission’s tasks was to develop sentencing guidelines that “[r] educe sentencing disparities based on factors other than offense characteristics and offender characteristics and ensure that offenders with similar offense and offender characteristics receive substantially similar sentences”); People v Babcock, 469 Mich 247, 263; 666 NW2d 231 (2003) (“The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment.”).

 Smith, supra at 299, citing Babcock, supra at 257-258, citing People v Fields, 448 Mich 58, 62, 67-68; 528 NW2d 176 (1995).

 The presentence investigation report states that the officer “could observe a male subject with light hair, who then put a black hood over his head. There were no other occupants visible in the car." (Emphasis added.) Contrary to the implication of the majority, it is a reasonable inference that the only person the officer saw in the vehicle was the driver of that vehicle.