# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL THOMAS LAUBE,

Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 319268
Wayne Circuit Court
LC No. 13-006250-FC

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Following a bench trial, defendant appeals as of right his convictions for two counts of armed robbery, MCL 750.529. He was sentenced to 11 to 20 years' imprisonment for both armed robbery convictions. Because defendant was not denied the effective assistance of counsel and he is not entitled to resentencing, we affirm.

Defendant's convictions relate to his armed robbery of a Honey Baked Ham on July 1, 2013. At the time of the robbery, two employees, Timothy Kelsey and Jane Williams, were working in the store. Kelsey heard a buzz at the back door and when he opened it slightly, it was yanked out of his hand. Defendant then entered the store, placed Kelsey in a headlock, held a knife to his throat, and threatened to slice Kelsey's throat if he did not "get money." Defendant continued to hold Kelsey in a headlock with a knife near his throat as they moved to the store's office where Williams and a safe were located. In the office, Kelsey told Williams to give defendant money and defendant held up the knife for Williams to see. Williams unsuccessfully attempted to open the safe. She then tried to retrieve her keys from a doorknob, but defendant slapped her hand. Kelsey then struggled with defendant over the knife, sustaining a cut to his hand that required numerous stitches. While Kelsey and defendant fought, Williams grabbed her keys, shut the office door, hit the panic button, and called 911. Before rushing from the scene, defendant broke Kelsey's nose and knocked him to the floor when Kelsey tried to grab him. Defendant was observed exiting the building and entering a van by a neighbor who recognized defendant's van. In a videotaped confession, defendant admitted committing the robbery.

Initially, the prosecutor charged defendant with one count of armed robbery as well as assault with intent to murder, assault with intent to do great bodily harm, and felonious assault. There were negotiations before trial regarding the possibility of a plea agreement. Although it is somewhat unclear from the record whether the prosecution offered more than one plea

-1-

agreement,[1] it is evident that the prosecution offered defendant a plea agreement requiring him to plead guilty to armed robbery and assault with intent to do great bodily harm less than murder in exchange for dismissal of the remaining charges and a sentence with the guidelines range, i.e., to 108 to 180 months' imprisonment. Defendant rejected the offer and proceeded to trial.

On the second day of trial, the trial court granted a motion from the prosecution to add a second count of armed robbery. The trial court then found defendant guilty of two counts of armed robbery and not guilty of the remaining counts. Defendant now appeals as of right.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that his trial attorney provided ineffective assistance during the plea bargaining process by (1) incorrectly advising defendant regarding the sentencing guidelines and by specifically telling defendant that if he went to trial he "would do no more than five years" and (2) by failing to inform defendant of the prosecution's intention to amend the felony information to add a second count of armed robbery. Defendant maintains that had he been properly advised by his attorney, he would have accepted the prosecution's plea offer. For this reason, he requests that this Court remand for reinstatement of the prosecution's plea offer.

Whether a person has been denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). On appeal, we review the trial court's factual findings for clear error, and we review constitutional questions de novo. *Russell*, 297 Mich App at 715. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), modified 481 Mich 1201 (2008) (quotation marks and citation omitted).

The right to effective assistance of counsel during a criminal trial is guaranteed by the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). The right to effective assistance of counsel extends to the plea bargaining process. *Lafler v Cooper*, ___ US ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). To establish the ineffective assistance of counsel, a defendant must satisfy a two-pronged standard by demonstrating "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probably that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citations omitted).

---

[1] Defendant testified at a *Ginther* hearing that there were two plea offers, one involving an offer of a seven year minimum sentence, but there was only one offer discussed on the record before trial, and defense counsel's testimony at the *Ginther* hearing suggests that there was only one potential plea agreement involving a nine year minimum sentence.

Under the first prong, the measure of counsel's performance is "simply reasonableness under prevailing professional norms." *Padilla v Kentucky*, 559 US 356, 366; 130 S Ct 1473, 1482; 176 L Ed 2d 284 (2010) (citation omitted). During plea bargaining, professional norms dictate that counsel communicate favorable offers to the defendant, apprise the defendant of the nature of the charges, and advise the defendant of the direct consequences of accepting a plea. *Missouri v Frye*, __ U S__; 132 S Ct 1399, 1408; 182 L Ed 2d 379 (2012); *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). In other words, defense counsel has an obligation to provide the information necessary to enable the defendant "to make an informed and voluntary choice between trial and a guilty plea." *Corteway*, 212 Mich App at 446.

Under the second prong, to demonstrate prejudice during the plea process, "the defendant must show the outcome of the plea process would have been different with competent advice." *Douglas*, 496 Mich at 592, quoting *Lafler*, 1332 S Ct at 1384. To make this showing, the defendant must demonstrate that, but for the ineffective advice of counsel:

> there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Lafler,* 132 S Ct at 1385.]

In this case, following a *Ginther* hearing at which both defendant and his trial counsel testified, the trial court rejected defendant's claim of ineffective assistance. First, as a factual matter, the trial court determined that, contrary to defendant's representations, defendant's attorney had not informed defendant that he would receive no more than a five year minimum sentence if he went to trial. This finding was supported by defendant's attorney, who testified at the hearing that he had made no such assurances to defendant. According to defendant's attorney, far from assuring defendant of no more than a five year minimum, he calculated the sentencing guidelines "several different ways" in consideration of certain guideline factors that were in dispute between the defense and the prosecution, and he conveyed this sentencing guideline scoring information to defendant. Moreover, in defendant's presence, before trial, the prosecutor stated on the record that the guideline range had been calculated at 108 to 180 months' imprisonment and defense counsel confirmed that this was an accurate representation of the parties' discussions. In contrast, defendant testified that he had been told that he would receive no more than a five year minimum sentence if he went to trial, and he denied receiving any information regarding the scoring of the guidelines The credibility of defendant's testimony compared to that of his attorney was a question for the trial court. See *Dendel*, 481 Mich at 130; MCR 2.613(C). Given counsel's testimony, the trial court did not clearly err in concluding that defendant's attorney advised him of the possible sentencing consequences, and thus defendant was not denied the effective assistance of counsel on this basis.

Second, again, as a factual matter it appears that the trial court did not credit defendant's assertion that he had not been informed by his attorney of the prosecution's intent to amend the felony information to add a second count of armed robbery. At the hearing, defendant's trial attorney testified that he was "fairly certain"—and "sure"—that he mentioned the possibility of the additional count of armed robbery to defendant and that he informed defendant of the effect

-3-

that this count would have on the scoring of prior record variable (PRV) 7. He further stated at the *Ginther* hearing that the amendment to add a second count of armed robbery did not come as a surprise, either to himself or to defendant. In contrast, despite the fact that the additional count of armed robbery was added on the second day of trial, defendant asserted repeatedly in his testimony at the *Ginther* hearing that he was unaware of this addition until sentencing. Although the trial court did not expressly find that counsel informed defendant of the possibility of an additional charge before trial, the trial court appeared to credit defense counsel's testimony, finding that counsel had provided "excellent counsel" and specifically noting that the amendment of the information had been granted at trial because the defense had ample notice of the matter. In other words, it appears to us that the trial court implicitly determined, contrary to defendant's representations, that the addition of the second armed robbery charge was not a surprise to defendant. We see nothing clearly erroneous in this finding and no reason to disturb the trial court's implicit credibility determination on this point. Cf. *Dendel*, 481 Mich at 131 (declining to disturb implicit findings of credibility by the trial court).

Overall, we see no basis in the lower court record for concluding that the trial court clearly erred when it determined that defense counsel provided effective assistance to defendant during the plea bargaining process. It appears that defense counsel adequately advised defendant regarding his charges—including the possibility of an additional count of armed robbery—and the sentence-related consequences of accepting or rejecting the plea agreement, thereby enabling defendant to make an informed and voluntary choice between proceeding to trial and accepting the plea agreement. See *Corteway*, 212 Mich App at 446. Consequently, defendant has not shown counsel's performance fell below an objective standard of reasonableness, and he has not demonstrated he was denied the effective assistance of counsel. See *Douglas*, 496 Mich at 592.

In addition, we note that, even if counsel performed as alleged by defendant and even if such performance could be considered objectively unreasonable, defendant would still not be entitled to relief because he has not shown he was prejudiced by counsel's performance. That is, defendant has not shown counsel's representation affected the outcome of the plea proceedings because he has not shown a reasonable probability that he would have accepted the prosecution's offer. See *Lafler,* 132 S Ct at 1384-1385; *Douglas*, 496 Mich at 598. Specifically, as noted, the prosecution offered defendant a deal which would require defendant to plead guilty to one count of armed robbery and one count of assault with intent to do great bodily harm. Considering the prosecution's offer and the testimony presented at the *Ginther* hearing, the trial court determined at as a factual matter that defendant declined this offer, not because of any purported error by his attorney, but because the prosecution remained unwilling to dismiss the assault charges and neither defendant nor his attorney believed defendant guilty of assault. The trial court explained that "the prosecutor's office, in essence, forced a trial in this particular case by virtue of the fact that they insisted that there be a plea to assault . . . along with a plea to armed robbery." Because defendant and his attorney disagreed with the assault charges, the trial court reasoned that the case went to trial because defendant "was unwilling to adhere to the prosecutor's plea offer."

Relevant to this conclusion, at the *Ginther* hearing, defendant testified repeatedly that he would have pled guilty to armed robbery, but he denied his guilt regarding any assault charges and he acknowledged that it was his unwillingness to plead to assault charges which motivated his refusal of the prosecution's plea offer. For example, when questioned by the trial court, defendant testified as follows:

-4-

*THE COURT:* [Defendant], when you first appeared in this [c]ourt before me, the prosecutor at the time stated what the plea offer was going to be, and the plea offer involved your having to plead to one [c]ount of armed robbery, but also requiring that you plead to assault with intent to do great bodily harm; is that correct?

[*Defendant*]: Yes, sir. Actually, that was the second one. The first one was plead to armed robbery and assault with intent to do murder.

*THE COURT:* And you believed as did your attorney that while you were guilty of armed robbery, you were not guilty of any assault with intent to murder or assault with intent to do great bodily harm; is that true?

[*Defendant*]: Yes, sir.

*THE COURT:* Okay. And you weren't going to plead to that offer because it was going to require you to plead guilty to either assault with intent to murder or assault with intent to do great bodily harm; is that right?

[*Defendant*]: Yes, sir.

Defense counsel similarly testified that neither he nor defendant believed the assault charges were warranted on the facts of this case. Further, according to defense counsel's recollection, defendant accepted responsibility for the acts giving rise to his armed robbery convictions, he was remorseful for this conduct and willing to plead to armed robbery, but he was unwilling to plead to the other charges. We emphasize, as did the trial court in its analysis, that the prosecutor never extended defendant an offer to plead guilty to only armed robbery; the prosecution's offer was always contingent on defendant pleading guilty to a charge of assault in addition to a charge of armed robbery. Consequently, given the terms of the prosecution's offer and defendant's refusal to plead to an assault charge, we see no clear error in the trial court's determination that defendant proceeded to trial because he was unwilling to accept a plea involving an admission of guilt to assault.

Although in contrast defendant repeatedly asserted at the *Ginther* hearing that he would have accepted the prosecution's offer if properly advised by his attorney regarding the sentencing guidelines and potential second armed robbery charge, this assertion was undermined by his repeated indication that it was his innocence in respect to the assault charges which motivated his refusal of the prosecution's offer. Cf. *Douglas*, 496 Mich at 596-598. Indeed, given the terms of the prosecution's offer and defendant's unwillingness to plead guilty to assault, defendant has not explained how any purported mistake by defense counsel impacted his refusal of the prosecution's plea agreement. Accordingly, he has not shown that counsel's performance affected the outcome of the plea proceedings because he has not shown a reasonable probability that he would have accepted the agreement as offered. See *Lafler,* 132 S Ct at 1384-1385; *Douglas*, 496 Mich at 598. Because defendant has not shown counsel's performance fell below an objective standard of reasonableness or that, but for counsel's performance, there was a reasonable probability of a different outcome, defendant has not shown

he was denied the effective assistance of counsel and he is not entitled to reinstatement of the prosecution's offer.

## II. OFFENSE VARIABLE SCORING

On appeal, defendant also argues that the trial court erroneously scored offense variables (OV) 1, OV 4, and OV 9. Taken together, the rescoring of these variables would affect defendant's recommended minimum sentencing range under the legislative guidelines, and consequently defendant argues he is entitled to resentencing.

Generally, a trial court is required to impose a sentence within the range calculated under the legislative sentencing guidelines. MCL 769.34(2). To determine the appropriate range, the trial court first scores a defendant's PRVs and OVs, and then uses those totals to determine the appropriate sentencing range "from the intersection of the offender's offense variable level and prior record variable level" on the sentencing grid for the offense involved. See *People v Bemer*, 286 Mich App 26, 32; 777 NW2d 464 (2009). On appeal, our review of the trial court's scoring decisions involves a two-step process. *People v Marshall*, 495 Mich 983; 843 NW2d 925 (2014). First, we review the trial court's factual determinations for clear error, mindful that those factual determinations must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Second, we then consider whether the facts, as found, are adequate to satisfy the scoring conditions described in the statute. *Id.* Whether the facts as found support the score in question presents a question of statutory interpretation, which we review de novo. *Id.* When interpreting statutes, our purpose is to give effect to the Legislature's intent by enforcing the plain and ordinary meaning of the statute's language as written. *People v Armstrong*, 305 Mich App 230, 243; 851 NW2d 856 (2014).

In this case, defendant first argues that the trial court erroneously assessed 25 points for OV 1 because defendant did not cut Kelsey with a knife during the offense. Rather, as recognized by the trial court in its findings following trial, Kelsey sustained his injuries when he grabbed the knife himself. Accordingly, defendant asserts that the trial court should have assessed 15 points for OV 1.

The statutory basis of OV 1 is MCL 777.31, which provides for an assessment of points with regard to offenses that involved the "aggravated use of a weapon." MCL 777.31(1). Twenty-five points shall be assessed if "[a] firearm was discharged at or toward a human being or *a victim was cut or stabbed with a knife* or other cutting or stabbing weapon." MCL 777.31(1)(a) (emphasis added). In comparison, fifteen points shall be assessed if "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c).

It is uncontested in the present case that during the robbery Kelsey suffered a cut to his hand when he grabbed for defendant's knife during a struggle with defendant. Despite these facts, defendant argues that OV 1 may not be scored because defendant did not attack Kelsey during the robbery to cause the cut; rather, defendant argues that by reaching for the knife, Kelsey essentially caused his own injury. Contrary to defendant's arguments, nothing in the plain language of the statute requires that defendant affirmatively attack the victim with the knife or purposefully cut the victim to merit a score of 25 points under OV 1. Rather, relevant to the

present facts, all that is required is by the statute's plain language to establish the aggravated use of a weapon is that "a victim was cut . . . with a knife" during the offense. MCL 777.31(1)(a). See also *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014). Clearly, defendant brought the knife to the robbery and he used the knife in a manner which prompted the struggle in which Kelsey sustained his injury. We see nothing in the statute's plain language to suggest that OV 1 should not be scored because Kelsey cut his hand while trying to wrestle the knife from defendant during the robbery as opposed to defendant proactively stabbing Kelsey. Kelsey was plainly a "victim" and, because he was "cut with a knife" during the robbery, the trial court did not err in scoring defendant 25 points under OV 1. See MCL 777.31(1)(a).

Next, defendant argues that the trial court erroneously assessed 10 points for OV 4 because, according to defendant, Williams did not suffer "serious psychological injury."

MCL 777.34 provides that a trial court should assess points if a victim sustained psychological injury. MCL 777.34(1). In particular, ten points shall be assessed if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). In determining whether a victim suffered serious psychological injury, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). Instead, OV 4 should be scored "if the serious psychological injury *may* require professional treatment." MCL 777.34(2) (emphasis added). Depression or personality changes, sleeplessness, reports of "reliving" the events, as well as evidence that a victim feels angry, hurt, violated, or fearful are sufficient to support a scoring under OV 4. *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013); *People v Earl*, 297 Mich App 104, 110; 822 NW2d 271 (2012).

In this case, the trial court did not clearly err in finding that Williams suffered serious psychological injury because it is evident from the victim impact statement in the PSIR that, although Williams did not seek therapy, she continued to experience fear and trauma after the incident occurred. The PSIR reveals that following the robbery Williams has trouble sleeping, she thinks about the robbery on a daily basis, and she is "still shaken up" by the robbery. Additionally, Williams testified at trial that she was "terrified" during the armed robbery. Williams's terror during the event as well as her difficulty sleeping and the lingering emotional impact of the robbery supported the trial court's finding that Williams suffered serious psychological injury requiring professional treatment. Accordingly, the trial court properly assessed 10 points for OV 4. See MCL 777.34(1)(a).

Finally, defendant argues that the trial court erroneously assessed 10 points for OV 9. In particular, defendant maintains that because he received two armed robbery convictions, there was only one victim for each offense and thus the trial court clearly erred in finding that there were two or more victims placed in danger of physical injury or death during the scoring offense.

Relevant to defendant's claim, MCL 777.39 provides for an assessment of points based on the number of victims involved. MCL 777.39(1). Ten points shall be assessed if, among other scenarios, "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Under this provision, the trial court should "[c]ount each person who was placed in danger of physical injury or loss of life . . . as a victim." MCL 777.39(2)(a). To qualify as a victim, the individual must be a direct victim of the crime. *People v Carrigan*, 297 Mich App 513, 515-516; 824 NW2d 283 (2012). Further, for purposes of OV 9, a trial court

may only consider "conduct that relates to the offense being scored." *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008). Consequently, "when scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." *Id.*

In this case, both Kelsey and Williams were with defendant while he demanded money, held a knife in clear sight, held Kelsey in a headlock, wrestled with Kelsey over the knife, and slapped or pushed Williams's hand. Given these facts, the trial court did not clearly err in finding that both Kelsey and Williams were placed at risk of physical injury or death. See MCL 777.39(1)(c), (2)(a). Although defendant emphasizes that each armed robbery resulted in a separate conviction and thus the scoring of PRV 7, there is nothing in the statutory language that prevents a trial court from assessing 10 points for OV 9 merely because a defendant's conduct toward a second victim led to a separate conviction which was scored under PRV 7. See generally *Bemer*, 286 Mich App at 34-35 ("Typically, there is nothing to preclude a particular factor . . . from serving as the basis underlying the scoring of multiple variables."). Moreover, while defendant attempts to cast these offenses as two unrelated crimes, armed robbery is a transactional offense and, because defendant's conduct toward both victims occurred during the same criminal transaction, both individuals may be considered victims for purposes of OV 9. See *Sargent*, 481 Mich at 350; *People v Mann*, 287 Mich App 283, 287; 786 NW2d 876 (2010). That is, on the facts of this case, defendant's robbery of Kelsey did not end when defendant also began to threaten Williams with a knife, and we see no reason why Williams should not be considered "a victim" during Kelsey's robbery and vice versa. See *Sargent*, 481 Mich at 350 n 2; *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). In sum, the trial court did not clearly err in concluding both Kelsey and Williams were victims, and consequently the trial court properly scored OV 9 at 10 points.[2] See MCL 777.39(1)(c).

Because defendant's sentence of 11 to 20 years' imprisonment is within the appropriate guideline sentence range of the properly scored guidelines, defendant is not entitled to resentencing. MCL 769.34(10); *Mann*, 287 Mich App at 288.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio

---

[2] On appeal, defendant offers the cursory assertion that defense "[c]ounsel performed ineffectively by failing to object," presumably in reference to the trial court's scoring of the offense variables. The record shows, however, that defense counsel did object to the scoring of OV 1 and OV 4. In any event, because the trial court properly scored OV 1, OV 4, and OV 9, any objection by counsel to the scoring of these variables would have been futile and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).