# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DARRYL KEITH STEWART,

       Defendant-Appellant.

UNPUBLISHED
February 18, 2016

No.  323684
Wayne Circuit Court
LC No.  14-003373-FC

Before:  GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, discharge of a firearm in a building, MCL 750.234b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for shooting Marquis Tobias after stealing his gun.  Defendant challenges the sufficiency of the evidence supporting his armed robbery conviction, counsel's performance before and during trial, and the scoring of several offense variables (OVs).  We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. BACKGROUND

On January 24, 2014, Tobias, Lester Mosley, and Victor Oliver, decided to purchase marijuana.  Mosley contacted defendant to arrange the transaction.  The three men drove to pick up defendant and then travelled together to Mosley's house.  Inside the home, defendant and Tobias discussed firearms.  Tobias stated he had a .380 Bersa semi-automatic handgun in his coat. Defendant asked to see it, and Tobias removed the gun to show it off.  Defendant grabbed the gun and declared that it now belonged to him.  He pointed the gun at Tobias, who tried to flee.  Defendant fired the gun at Tobias, shooting him several times in the thighs.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that insufficient evidence supported his armed robbery conviction because the larceny was complete once he took Tobias's firearm and before any assault occurred. Therefore, defendant argues, the completed larceny cannot be used to satisfy the larceny element of armed robbery.  We review de novo challenges to the sufficiency of the evidence, "view[ing] the evidence in a light most favorable to the prosecution [to] determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable

-1-

doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007) (quotation marks and citation omitted). We review de novo any question of statutory interpretation. *Id.*

The armed robbery statute, MCL 750.529, provides:

> A person who engages in conduct proscribed under [MCL 750.530] and who *in the course of engaging in that conduct*, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony . . . . [Emphasis added.]

MCL 750.530 in turn provides:

> (1) A person who, *in the course of committing a larceny* of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony . . . .
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or *in an attempt to retain possession of the property*. [Emphasis added.]

To establish the elements of armed robbery under these statutes, the prosecutor must prove that

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7-8; 742 NW2d 610 (2007).]

Defendant ignores that the plain language of the armed robbery statutes define the crime as transactional, covering all acts "in the course of committing a larceny." MCL 750.530(2) defines "in the course of committing a larceny" as including "acts . . . in an attempt to retain possession of the property." Tobias testified that defendant took the gun and immediately fired at him. This testimony sufficed to establish that defendant "use[d] force or violence" against Tobias "to retain possession of the" weapon. There was no break between defendant's seizure of the gun and his use of the gun to separate the larceny from the assault, placing defendant's conduct squarely within the statutory definition of armed robbery.

## III. SCORING OF OFFENSE VARIABLES

Through appellate counsel, defendant challenges the factual basis for scoring OVs 3 and 9 when calculating his sentencing guidelines. In an in pro per brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant challenges the scoring of OVs 4 and 19. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo the court's interpretation and application of the statutory sentencing guidelines. *Id.*

The trial court scored 25 points for OV 3 (physical injury to the victim), reflecting that a "[l]ife threatening or permanent incapacitating injury occurred to a victim." Defendant contends that the court should have assessed 10 points, indicating that "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(c), (d). At sentencing, defendant argued that OV 3 should be scored at 10 points because Tobias's gunshot wound was not life threatening. The prosecutor argued that a 25-point score was warranted because Tobias was "shot through the legs very close to the femoral artery." The trial court assessed 25 points, explaining, "[T]he simple fact of the matter is that he was shot by a gun and did need hospital care."

The plain language of MCL 777.33(1) categorizes injuries according to what actually happened: "[l]ife threatening . . . injury *occurred* to a victim," or "injury requiring medical treatment *occurred*." (Emphasis added.) The statute requires scoring based on the degree of physical injury actually sustained. Although the evidence established that Tobias received medical treatment for his injuries, there was no evidence that his injuries were life threatening. Neither the potential for a life-threatening injury had a bullet struck Tobias's femoral artery, nor the mere nature of the injury as a gunshot wound establishes that the injury was life threatening. Accordingly, the trial court erred in assessing 25 points, instead of 10, for OV 3.

The trial court scored 10 points for OV 9, reflecting that "2 to 9 victims . . . were placed in danger of physical injury or death. . . ." MCL 777.39(c). The statute requires the sentencing court to "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a). The court's score was based on the presence of another man who was sleeping on the floor near the shooting. Defendant contends that there was no evidence that this man was in any danger and therefore zero points should have been scored.

In *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004), our Supreme Court held that OV 9 was properly scored at 10 points where one person was robbed, and a second person "was standing nearby and responded to [the victim's] call for help." When this Good Samaritan intervened, the defendant actually shot him. *Id.* at 253. In *People v Harverson*, 291 Mich App 171, 181; 804 NW2d 757 (2010), this Court upheld a 10-point score where the victim's mother jumped between the victim and the defendant when the defendant was pointing a gun at the victim's face. This case is distinguishable because the sleeping man was merely present during the shooting. He was not targeted by defendant, did not attempt to intervene in any way, and there is no evidence that he was in the line of fire such that he was in danger of physical injury or death. Accordingly, the trial court erred in assessing 10 points for OV 9.

Although defendant now challenges the trial court's assessment of 10 points for OV 4 (victim's psychological injury), defense counsel expressly agreed at sentencing that OV 4 was correctly scored. This express approval waived review of this issue. A waiver extinguishes any error, leaving no error to review. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012).

Defendant also challenges the trial court's assessment of 15 points for OV 19. OV 19 is scored at 15 points when the defendant "used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b). Here, Mosely was reluctant to testify because defendant had earlier related a cautionary tale to him about a criminal defendant who had directed people outside of jail to "beat up" a codefendant. At trial, the prosecution presented a recorded jailhouse telephone call between defendant and another party that involved a discussion of ways to prevent witnesses from giving unfavorable testimony. Defense counsel argued that the other party was the instigator and there was no indication that defendant approved of any plan to intimidate the witnesses at his trial. However, Tobias testified that he received several threatening telephone calls from an unidentified caller warning him against giving incriminating testimony. This evidence was sufficient to support the 15-point score.

Without the erroneous scoring of OVs 3 and 9, defendant's total OV score would be 90 points instead of 115 points, reducing his OV Level to V from VI. The scoring adjustment will reduce defendant's guidelines range from 171 to 285 months to 135 to 225 months. Because the scoring errors affect the appropriate guidelines range, defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006). Although not raised as a claim of error, we note for instructional purposes that the law surrounding sentencing has changed since defendant's original proceedings. On remand, the court's resentencing will be governed by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and its progeny.

## IV. ASSISTANCE OF COUNSEL

In his in pro per brief, defendant argues that the trial court erred in denying his request on the first day of trial for new counsel. We review for an abuse of discretion a trial court's decision on such a motion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001).

Although indigent defendants are entitled to the assistance of appointed counsel, the right does not extend to counsel of the defendant's choosing. The appointment of substitute counsel "is warranted only upon a showing of good cause and where substitution would not unreasonably disrupt the judicial process." *Id.* "Good cause may exist when 'a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic,' when there is a 'destruction of communication and a breakdown in the attorney-client relationship,' or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; ___ NW2d ___ (2015) (citations omitted).

Defendant complained that trial counsel met with him only once, that she did not discuss strategy with him, and that she disregarded his suggestions about evidence. The trial court listened to defendant's complaints, and also heard from trial counsel, who stated that she met with defendant at least three times, had provided him with all discovery materials, and discussed

the evidence and defendant's defense theory with him. Although defendant was concerned about counsel's lack of preparation, counsel demonstrated familiarity with the case and the evidence. The trial court was satisfied that counsel was prepared for trial and was attentive to defendant's concerns. Nothing in the record substantiates defendant's complaints that counsel was unprepared or overlooked effective defense strategy. There is no basis for concluding that the trial court abused its discretion in denying defendant's request for new counsel.

Finally, defendant contends that defense counsel was constitutionally deficient for failing to object to improper arguments and images shown in the prosecutor's opening statement, and failing to raise certain arguments in relation to the physical evidence. Because defendant did not seek a new trial or an evidentiary hearing, our review is limited to errors apparent on the existing record. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds ___ Mich ___; 870 NW2d 893 (2015).]

Defendant argues that trial counsel should have obejcted to the following commentary in the prosecutor's opening statement:

> Mr. Tobias is going to tell you that the defendant asked to see his gun. And he's going to tell you that he took out his gun and showed it to the defendant, and he's going to tell you that the defendant then snatched the gun from his hand, clicked the safety off, claimed it as the defendant's own gun, *pointed it at Mr. Tobias' head, and then pulled the trigger*. [Emphasis added.]

Defendant contends that the prosecutor thereby falsely implied that he shot Tobias in the head.

"When a prosecutor states that evidence will be submitted to the jury, which subsequently is not presented, reversal is not warranted if the prosecutor acted in good faith." *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991). Here, the prosecutor accurately stated that Tobias would testify that defendant pointed the gun at his head and pulled the trigger. At

trial, Tobias testified that after defendant took the gun, he pointed it at Tobias's head. Tobias explained that he (Tobias) then moved, and defendant started shooting. The prosecutor did not state that Tobias received a gunshot wound to the head. In fact, as defense counsel would have known, the prosecutor had previously told the jury that Tobias was shot through the legs. Therefore, the jury would not have misunderstood that Tobias was shot in the head. Because the prosecutor's remark was not improper, an objection by defense counsel would have been futile, and counsel cannot be deemed ineffective for failing to raise one. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant asserts that counsel should have objected when the prosecutor displayed a photo of Tobias's injuries during opening statement, before the photo had been admitted into evidence. During a later discussion, defense counsel explained that she did not object because the defense was not contesting the nature of Tobias's injuries. Even if the prosecutor's display of the photo was premature, defense counsel's failure to object was not objectively unreasonable as the photo pertained to an uncontested issue and it was later admitted into evidence.

Defendant also criticizes defense counsel for not arguing that the bullet found by the homeowner and given to police detective Dean Molnar could not have been fired from Tobias's gun. Defendant emphasizes Molnar's testimony that the bullet was either a nine-millemeter or .38 caliber bullet, inconsistent with Tobias's gun, which was a "380 Bersa." Molnar testified, however, that a "380" belongs to the same class as nine-milleleter and .38 caliber weapons, and that it was not possible to distinguish among different bullets in this class. Molnar expressly testified that the recovered bullet was consistent with one that could be fired from a Bersa 380. In light of Molnar's testimony, any argument by counsel that the physical evidence was inconsistent with Tobias's gun would have been meritless. "Failing to advance a meritless argument . . . does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201. Moreover, defense counsel argued that "the one pristine bullet" that the homeowner allegedly uncovered had little evidentiary value because the bullet was "within a classification of a number of guns that could have been fired by both semiautomatic and revolvers and manufactured by a number of people." This was an objectively reasonable argument in light of the testimony regarding the type of weapon and class of bullets at issue in this case. Accordingly, defendant cannot establish that his counsel was constitutionally deficient.

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro