Weaver, J.
Defendant Latasha Morson waited in a car while her friend, Iesha Northington, robbed Deborah Sevakis of her purse at gunpoint, using a gun obtained from defendant. As Northington fled the scene, she shot James Bish, who tried to stop her and recover Sevakis’s purse. Following a bench trial, defendant was convicted of armed robbery,[1] conspiracy to commit armed robbery,[2] and two counts of possession of a firearm during the commission of a felony.[3] She was sentenced to concurrent terms of eight to thirty years for the armed robbery and conspiracy convictions,[4] to be served consecutively to the mandatory two-year sentence for felony-firearm.
The first issue to be addressed is how many points defendant could be properly assessed at sentencing under offense variables (OV) 1 and 3. Ov 1, which considers aggravated use of a weapon, and OV 3, which considers physical injury to the victim, require both that the highest number of points be assessed and that multiple offenders be assessed the same number of points for these variables. When Iesha Northington’s *252 armed robbery conviction was scored on May 10, 2000, she was assessed fifteen points for OV 1 and zero points for OV 3. But when defendant’s armed robbery conviction was scored on December 10, 2001, the sentencing court assessed defendant twenty-five points for OV l and twenty-five points for OV 3. The Court of Appeals reversed the decision of the sentencing court on this issue, concluding that the multiple offender provision required that defendant’s scores on OV l and OV 3 be the same as those previously assessed to Iesha Northington for OV 1 and OV 3.
The second issue that must be decided is how many points defendant could be properly assessed under OV 9, which considers the number of victims. The sentencing court assessed ten points under this variable, concluding that there were two victims. The Court of Appeals reversed and concluded that defendant should be assessed zero points because there was one victim.
We affirm in part and reverse in part. The Court of Appeals correctly concluded that pursuant to the sentencing guidelines, defendant should have been assessed the same scores for OV l and OV 3 that Iesha Northington was assessed. But the Court of Appeals incorrectly held that under OV 9, defendant should have been assessed zero points because there was only one victim. Pursuant to the language of the guidelines, two people were placed in danger. Consequently, the sentencing court properly assessed defendant ten points under OV 9. We remand this case to the circuit court for resentencing consistent with this opinion.
PACTS
Deborah Sevakis was robbed of her purse at gunpoint by Iesha Northington as Sevakis was walking down Nine Mile Road in Ferndale at about 10:00 P.M. on May *253 29, 1999. Sevakis testified that someone tapped her on the shoulder and demanded her purse. When Sevakis initially refused to give up her purse, Northington pointed a gun at her. As Northington ran off with the purse, Sevakis yelled, “Call 9-1-1. I’ve been robbed.” Immediately, James Bish, who was standing nearby and had witnessed the robbery, ran after Northington. When Bish told Northington to drop the purse, Northington shot him.
In her written statement to the police, defendant stated that as she and Northington were driving down Nine Mile Road, they observed a lady walking with her purse and discussed robbing her. Northington got out of the car while defendant drove to a gas station. Defendant next observed Northington running toward the car, carrying a black purse. She also saw a man running and holding his chest; Northington told her that she thought she had shot the man. Defendant admitted that she had given Northington the gun that Jermaine Calloway had given her. Defendant stated that she and Northington stopped to get gas, then went to a Kmart store, where they tried unsuccessfully to use Sevakis’s credit card.
Following a bench trial, defendant was convicted of armed robbery, conspiracy to commit armed robbery, and two counts of felony-firearm.[5] Before defendant’s sentencing, Northington, who was sentenced on May 10, 2000, was assessed fifteen points on OV 1 and zero points on OV 3. At defendant’s sentencing on December 10, 2001, she asserted that she should be assessed the same number of points as Ms. Northington on OV 1 and OV 3 when defendant’s armed robbery conviction was *254 scored. But the court assessed defendant twenty-five points on OV 1 and twenty-five points on OV 3 when scoring defendant’s armed robbery conviction. The trial court also assessed defendant ten points on OV 9.
Defendant appealed, and the Court of Appeals reversed and remanded for resentencing.[6] The Court of Appeals concluded that defendant should have been assessed the same scores as Northington on OV l and OV 3 for the armed robbery conviction. Additionally, the Court of Appeals concluded that defendant should have been assessed zero points on OV 9 because there was only one victim, not two.
This Court granted the prosecution’s application for leave to appeal. [7]
*255 STANDARD OF REVIEW
The issues in this case concern the proper interpretation and application of the legislative sentencing guidelines, MCL 777.11 et seq., which are legal questions that this Court reviews de novo. People v Perkins, 468 Mich 448, 452; 662 NW2d 727 (2003). When construing a statute, this Court’s primary goal is to give effect to the intent of the Legislature. We begin by construing the language of the statute itself. Where the language is unambiguous, we give the words their plain meaning and apply the statute as written. People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999).
ANALYSIS
Generally, to determine a minimum sentence range under the legislative sentencing guidelines, the sentencing court must first determine the offense category. MCL 777.21(l)(a). The sentencing court must then determine which offense variables (OV) are applicable, score those variables, and total the points to determine the offender’s offense variable level. Id. The sentencing court also scores all prior record variables. MCL 777.21(l)(b). The offender’s offense variables score and prior record variables score are then used with the sentencing grids to determine the recommended minimum sentence range under the guidelines. MCL 777.21(l)(c).
In this case, the sentencing issues presented arise out of defendant’s armed robbery conviction, MCL 750.529. Under the guidelines, armed robbery is categorized as a *256 crime against a person. MCL 777.16y. MCL 777.22(1), as amended by 2002 PA 143, provided:
For all crimes against a person, score offense variables 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 19, and 20. Score offense variables 5 and 6 for homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder. Score offense variable 16 under this subsection for a violation or attempted violation of.. . MCL 750.110a. Score offense variables 17 and 18 if an element of the offense or attempted offense involves the operation of a vehicle, vessel, OKV( snowmobile, aircraft, or locomotive.
At issue are defendant’s scores for OV l, OV 3, and OV 9.
ov 1 and ov 3
Ov 1 assesses points for the aggravated use of a weapon, MCL 777.31, and OV 3 assesses points for physical injury to a victim, MCL 777.33. This case concerns how these two variables are to be scored in cases involving multiple offenders. MCL 777.31 provides in part:
(1) Offense variable 1 is aggravated use of a weapon. Score offense variable 1 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) A firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon......25 points
(c) A firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon................15 points
*257 (d) The victim was touched by any other type of weapon...................10 points
(e) A weapon was displayed or implied.......5 points
(f) No aggravated use of a weapon occurred.........0 points
(2) All of the following apply to scoring offense variable 1:
(a) Count each person who was placed in danger of injury or loss of life as a victim.
(b) In multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points.
(c) Score 5 points if an offender used an object to suggest the presence of a weapon.
(d) Score 5 points if an offender used a chemical irritant, chemical irritant device, smoke device, or imitation harmful substance or device.
(e) Do not score 5 points if the conviction offense is a violation of... MCL 750.82 and 750.529. [Emphasis added.][8]
MCL 777.33 provides in part:
(1) Offense variable 3 is physical injury to a victim. Score offense variable 3 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) A victim was killed...........100 points
(b) A victim was killed...........50 points
(c) Life threatening or permanent incapacitating injury occurred to a victim........25 points
(d) Bodily injury requiring medical treatment occurred to a victim........10 points
(e) Bodily injury not requiring medical treatment occurred to a victim...........5 points
*258 (f) No physical injury occurred to a victim.............5 points
(2) All of the following apply to scoring offense variable 3:
(a) In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points.
(d) Do not score 5 points if bodily injury is an element of the sentencing offense.
(3) As used in this section, “requiring medical treatment” refers to the necessity for treatment and not the victim’s success in obtaining treatment. [Emphasis added. ][9]
When the sentencing court scored defendant’s armed robbery conviction, it assessed defendant twenty-five points on OV 1 for the shooting of Bish. But when Iesha Northington had previously been sentenced for the armed robbery before defendant, she was assessed only fifteen points under OV 1. Similarly, on OV 3, defendant was assessed twenty-five points for the shooting of Bish, while Iesha Northington had been assessed zero points.
Focusing on subsection 1 of each statute, the prosecution contends that defendant may be assessed twenty-five points for OV 1 and OV 3 when scoring the armed robbery conviction because subsection 1 requires the sentencing court to assess the “highest number of points” and because the sentencing court should not be bound to apply “inaccurate” scores. Defendant, on the other hand, asserts that subsection 2 of each statute requires that defendant, for her armed robbery convic *259 tion, be assessed the same scores for OV 1 and OV 3 that Iesha Northington was assessed when scored for armed robbery. On the facts before us, we agree with defendant that the plain language of subsection 2 requires that defendant, when scored on the armed robbery conviction, be assessed the same scores on OV 1 and OV 3 that Iesha Northington was previously assessed on those variables when she was scored for armed robbery.[10]
Each multiple offender provision states that if one offender is assessed points under the variable, “all offenders shall be assessed the same number of points.” MCL 777.31(2)(b), MCL 777.33(2)(a) (emphasis added).[11] While we agree that the sentencing court should not be bound to apply an erroneous score in the multiple offender context, we note that the prosecution does not characterize Iesha Northington’s scores on OV 1 and OV 3 of her armed robbery conviction as inaccurate or erroneous. In fact, the prosecution acknowledged in its brief that Northington’s scores were not disputed by the prosecution at sentencing.[12] Rather, the prosecution’s argument seems to be that whenever it appears *260 possible that a higher score could be argued for under the variables, a subsequent sentencing court is not bound by the prior score because the sentencing court is required to assess the “highest number of points.” We find such analysis contrary to the plain language of the statute, which requires the sentencing court to assess the same number of points to multiple offenders.[13]
Further, we reject the argument that our conclusion would read the “highest number of points” requirement out of the statute. When the sentencing court assesses points for the first offender, it must assess the “highest number of points” that can be assessed under the statute. If Iesha Northington’s scores were inaccurate or erroneous because the sentencing court failed to assess the highest number of points, the prosecution should have challenged the scores at Northington’s sentencing. But the prosecution acknowledges that Northington’s scores were not disputed and it does not argue to *261 this Court that the scores Northington received under OV 1 and OV 3 were erroneous. Consequently, in the absence of any clear argument that the scores assessed to Northington under OV 1 and OV 3 were incorrect, the sentencing court should have assessed defendant the same number of points that were assessed to Northington for OV 1 and OV 3 when her armed robbery conviction was scored: fifteen points and zero points.
For these reasons, we affirm the Court of Appeals conclusion concerning defendant’s scores for OV 1 and OV 3.
OV 9
Offense variable 9 assesses points on the basis of the number of victims. MCL 777.39 provides:
(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) Multiple deaths occurred......100 points
(b) There were 10 or more victims.......25 points
(c) There were 2 to 9 victims..........10 points
(d) There were fewer than 2 victims.......0 points
(2) All of the following apply to scoring offense variable 9:
(a) Count each person who was placed in danger of injury or loss of life as a victim.
(b) Score 100 points only in homicide cases. [Emphasis added.]
Defendant was assessed ten points by the sentencing court for two victims: Deborah Sevakis and James Bish. The Court of Appeals reversed that determination by the sentencing court, concluding that Sevakis was the *262 only victim of the armed robbery. We disagree with the Court of Appeals and therefore reverse its conclusion regarding OV 9.
Pursuant to the plain language of the statute, the sentencing court is to count “each person who was placed in danger of injury or loss of life” as a victim. Though Sevakis was the only person actually robbed, Bish, who was standing nearby and responded to Sevakis’s call for help, was also “placed in danger of injury or loss of life” by the armed robbery of Sevakis.[14] Consequently, the sentencing court properly counted Bish as a victim and properly scored defendant under OV 9.
CONCLUSION
We conclude that pursuant to the language of the sentencing guidelines, defendant should have been assessed the same number of points on OV 1 and OV 3 that Iesha Northington was assessed when scored on the armed robbery conviction. Unless the prosecution can demonstrate that the number of points assessed to the prior offender was erroneous or inaccurate, the sentencing court is required to follow the plain language of the statute, which requires the court to assess the same number of points on OV 1 and OV 3 to multiple offenders. The prosecution has not alleged that Northington’s score on these variables was in error. Consequently, we affirm the Court of Appeals conclusion that defendant should have been assessed the same number of points as Northington on OV 1 and OV 3.
Additionally, we conclude that defendant was properly assessed ten points by the sentencing court for OV 9 *263 because there were two people placed in danger of injury or loss of life: Sevakis, who was robbed, and Bish, a bystander who responded to Sevakis’s call for help. Accordingly, the decision of the Court of Appeals is reversed on this point.[15]
We remand the case to the circuit court for resentencing consistent with this opinion.
CORRIGAN, C.J., and CAVANAGH and Kelly, JJ., concurred with Weaver, J.

 MCL 750.529.

 MCL 750.157(a).

 MCL 750.227b.

 The Court of Appeals opinion incorrectly states the sentence as eight to twenty years. The sentencing transcript, sentencing information report, and judgment of sentence all state the term as eight to thirty years.

 Defendant and Northington were tried separately and sentenced by different judges. Though Northington was also charged with and convicted of assault with intent to commit murder, defendant was not.

 Unpublished opinion per curiam, issued May 29, 2003 (Docket No. 238750).

 469 Mich 966 (2003). The Court’s grant order instructed the parties to include among the issues briefed:
(1) how subsection 1 of MCL 777.31 (offense variable one [ov l]), requiring that the “highest number of points” be assigned, should be apphed in hght of subsection 2(b), requiring that “all offenders” in multiple offender cases be assessed the same number of points; (2) similarly, how subsection 1 of MCL 777.33 (ov 3), requiring that the “highest number of points” be assigned, should be apphed in hght of subsection 2(a), requiring that “all offenders” in multiple offender cases be assessed the same number of points; (3) whether MCL 777.31(2)(b) and 777.33(2)(a) apply where all “offenders” have not been charged with identical crimes; (4) whether under MCL 777.31(2)(b) and 777.33(2)(a) the trial court is bound by a previously imposed sentence upon a codefendant where that sentence is based upon an erroneous offense variable score; (5) whether under MCL 777.39 (ov 9) the number of persons placed in danger includes only those persons who are placed in danger during the particular crime for which defendant is being scored (here, armed robbery), or whether that number includes all persons placed in danger at any point during the criminal episode; and (6) whether the due process clauses of the state and federal constitutions require that the prosecution prove the elements of a crime that someone else committed before a court can base a defendant’s sentence on the actions of the other person. See Harris v United States, 536 US 545 *255 (2002), Apprendi v New Jersey, 530 US 466 (2000), and Washington v Blakely, 111 Wash App 851 (2002), cert gtd sub nom Blakely v Washington [124 S Ct 429 (2003)].

 Some amendments were made to the statute after the crime in the present case occurred. Subsection 1(d) was added in 2001. In 2002, amendments added subsection 1(b), which scores twenty points for exposure to harmful substances or incendiary devices, and subsection 3, which defines harmful substances and incendiary devices.

 This statute was revised in 2003, after the crime in this case was committed. The amendments, which increased the score imposed under 1(b) from thirty-five points to fifty points and made corresponding revisions to 2(c), do not affect the present case.

 Because the scoring issues in this case can be resolved under the plain language of the statute, it is unnecessary to address, as do the concurring and concurring/dissenting opinions, whether armed robbery is a transactional offense. See concurring opinion of Corrigan, C.J., at 263-266, 270, and partially concurring and partially dissenting opinion of Markman, J., at 275 n 2. Additionally, it is unnecessary to draw the sharp lines that Justice Markman attempts to draw between “offenses” stemming from this event. See post at 272-275.

 We note that there is no language in either statute to suggest that the multiple offender provision applies only when “offenders” are charged with identical crimes. Thus, the fact that Northington was charged with additional crimes — namely, assault with intent to murder — does not mean that the multiple offender provisions do not apply to the armed robbery convictions arising from the incident.

 Compare People v Libbett, 251 Mich App 353, 366; 650 NW2d 407 (2002), in which it was “undisputed” that the first offender sentenced had been scored improperly on OV l.

 Justice Young opines in Ms partially concurring and partially dissenting opimon that the multiple offender provision does not require a comparison of the ov scores for identical crimes (i.e., comparing Northington’s armed robbery ov 1 score with defendant’s armed robbery ov 1 score) but that the provision contemplates simply the comparison of OV scores. Post at 279-281. Not only is this inconsistent with MCL 777.21(2), which requires the sentencing court to score each offense, but such a reading may lead to illogical results. Suppose that defendant, like Northmgton, had also been convicted of assault with intent to commit murder. Under Justice Young’s theory, since the sentencing court would only compare the OV l scores, and not the OV scores received for a specific offense, presumably defendant could receive twenty-five pomts under OV l for both her assault with intent to murder conviction and her armed robbery conviction because the sentencing court, lookmg at only the OV l scores, could simply give defendant the highest OV l score — 25 points— that Northington received under ov l when her offenses were scored. Or suppose that defendant was convicted of an additional crime that NortMngton was not. Under Justice Young’s theory, NortMngton’s scores for an offense variable would be considered when defendant is subsequently scored and sentenced for the additional offense. TMs would be another illogical result of Justice Young’s theory.

 Justice Markman, in his concurring/dissenting opinion, fails to apply the plain language of the statute, which, as explained, requires the sentencing court to count “each person who was placed in danger of injury or loss of life” as a victim. MCL 777.39(2)(a).

 Given our resolution of the sentencing issues in this case, it is unnecessary to address whether due process requires that the prosecution prove the elements of a crime that someone else committed before a court can base a defendant’s sentence on the actions of the other person.