# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTJUAN PIERRE JACKSON,

Defendant-Appellant.

FOR PUBLICATION
July 25, 2017
9:00 a.m.

No. 332307
Kalamazoo Circuit Court
LC No. 2014-000203-FC

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant, Antjuan Pierre Jackson, appeals by delayed leave granted[1] the sentence imposed for his conviction pursuant to a guilty plea for unarmed robbery in violation of MCL 750.530. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 8 to 22 years and 6 months' imprisonment. Defendant contends that he is entitled to resentencing on the ground that the trial court incorrectly scored Offense Variable (OV) 1 (aggravated use of a weapon), OV 2 (lethal potential of weapon possessed or used) and OV 13 (pattern of continuing criminal conduct). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from a robbery that took place on January 20, 2014. The victims of the robbery testified at defendant's initial trial. Alexis Graham testified that, on the night of the robbery, she was in her apartment at the Landings Apartments in Kalamazoo, Michigan, along with her roommate Janyce Mack, and Madeleine Dirette. At 10:30 p.m., someone knocked on the door. Graham looked through the peephole and saw Tyrus Phillips, whom she recognized as someone who visited Mack on occasion to buy marijuana. She opened

---

[1] Defendant filed a delayed application for leave to appeal challenging his sentence, which application this Court denied. *People v Jackson*, unpublished order of the Court of Appeals, entered June 6, 2016 (Docket No. 332307). Defendant then filed an application for leave to appeal to the Michigan Supreme Court; in lieu of granting the application, the Supreme Court remanded the case to this Court for consideration as on leave granted. *People v Jackson*, 500 Mich 894; 887 NW2d 619 (2016).

the door and three gunmen rushed into the apartment. Graham fell backwards and was pulled by her shoulder and hair into Mack's bedroom down the hall. Complying with repeated orders to look only at the floor, she caught just a glimpse of the men. Nevertheless, she saw that the main gunman had a silver gun. When she heard him talking to Mack, she believed he was defendant. Graham stated that she knew the person whose voice and clothes she recognized by the name "Rico," and she made an in-court identification of defendant as the person she knew as Rico. Graham testified that she was confident that defendant was involved in the robbery. She also said that one of the gunmen held a gun to her head that she believed was real because she could feel its weight and the coldness of the metal.

Dirette testified that when Graham opened the door on the night of the robbery, she could hear the sound of people barging through the door loudly and Graham being pushed against the wall. A man with a shiny silver gun came into the room and told her to get on the floor. Three men wearing ski masks came into the bedroom. All three carried guns and threatened to shoot. Dirette did not recognize any of the men. On cross-examination, Dirette admitted that she could not be sure if the guns were real, but she assumed they were. On redirect examination, Dirette explained that the man with the silver-looking gun was the leader, and she stated that Mack begged the man not to shoot her. The other men had black guns and pointed them at her and Graham.

Mack testified that she knew at the time of the incident that the first robber was defendant. Defendant was pointing a silver gun with his finger on the trigger. She recognized defendant by the jeans and boots he was wearing; he had worn them the night before the robbery when he came to the apartment and bought marijuana from her. She also recognized defendant during the robbery by the tone of his voice and his choice of words, by the way he walked, and by his mannerisms. Defendant held his pants up with one hand and held the gun in the other hand. Mack testified that she was quite certain that defendant had a real gun. She observed that the gun was metal, and that defendant pointed it at her and ordered her onto the floor. Defendant ransacked the room and took her lockbox holding her marijuana and money, a prescription painkiller called Norco, her daughter's phone, her phone, and Graham's phone.

Defendant was arrested, charged with two counts of armed robbery and two counts of carrying a firearm during the commission of a felony (felony-firearm). He was tried by a jury in the summer of 2014, which acquitted him of the two felony-firearm counts, but deadlocked on the armed robbery counts, so the trial court declared a mistrial as to those two counts. Prior to the second trial, scheduled to commence in the fall of 2014, defendant entered into the guilty plea described above. He now challenges the guidelines scoring used in determining his sentence.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

We review for clear error the trial court's factual determinations used for sentencing purposes, and such facts must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo whether the facts, as found, are adequate to satisfy the statutory scoring conditions. *Id*. When calculating the sentencing guidelines scores, a trial court may consider all evidence in the record, including but not limited to the PSIR and admissions made by a defendant during a plea proceeding. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). The Michigan Supreme Court recently clarified that sentencing courts must determine the applicable range of sentence under the sentencing guidelines and take such calculations into account when imposing a sentence, but the guidelines are advisory only. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

### B. OV 13

Defendant first contends that the trial court incorrectly scored OV 13 at 25 points by improperly taking into account as scoreable felonies his two prior convictions for attempted resisting and obstructing a police officer. Defendant argues that the trial court should not have considered them because they were only misdemeanor convictions punishable by less than one year in jail. We disagree.

A trial court scores OV 13 when a defendant's criminal conduct within five years of the sentencing offense establishes a continuing pattern of criminal behavior. MCL 777.43 governs the scoring of OV 13 and provides in relevant part:

> (1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (c) The offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person . . . 25 points
>
> * * *
>
> (2) All of the following apply to scoring offense variable 13:
>
> (a) For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.
>
> * * *

(c) Except for offenses related to membership in an organized criminal group or that are gang-related, do not score conduct scored in offense variable 11 or 12.

In order to score 25 points for OV 13, the trial court was required to find that defendant had engaged in a pattern of felonious criminal activity by committing three or more crimes against a person (including the January 20, 2014 sentencing offense) within five years of the sentencing offense. MCL 777.43(1)(c). Defendant did not dispute his criminal record, which included convictions for the following crimes: 1) attempting to resist and obstruct a police officer on November 18, 2010; 2) attempting to resist and obstruct a police officer on March 5, 2011; 3) possession of less than 25 grams of cocaine on May 17, 2013, and 4) resisting and obstructing a police officer on May 17, 2013. He had also been charged with two counts of armed robbery committed on January 20, 2014, both of which were dismissed as part of the plea deal that resulted in defendant's conviction of one count of unarmed robbery in the instant matter.

Defendant argues that his attempted resisting and obstructing offenses cannot be considered for purposes of scoring OV 13 because they were misdemeanors punishable by less than one year in jail. However, the sentencing guidelines specifically describe how trial courts must treat attempt offenses for scoring purposes. MCL 777.19 provides:

> (1) This chapter applies to an attempt to commit an offense enumerated in this part if the attempted violation is a felony. This chapter does not apply to an attempt to commit a class H offense enumerated in this part.

> (2) For an attempt to commit an offense enumerated in this part, the offense category is the same as the attempted offense.

> (3) For an attempt to commit an offense enumerated in this part, the offense class is as follows:

> (a) Class E if the attempted offense is in class A, B, C, or D.

> (b) Class H if the attempted offense is in class E, F, or G.

Pursuant to MCL 777.19(2), the trial court was required to consider defendant's attempted resisting and obstructing offenses in the same offense category as the offense of actually resisting and obstructing a police officer. Thus, defendant's attempted resisting and obstructing offenses are to be considered crimes against a person.

With regard to the crime class of an attempted offense, MCL 777.19(3) controls. It is not clear from the record whether defendant's convictions were for attempts to violate MCL 750.81d(1) or MCL 750.479(2), but that makes no difference for purposes of scoring the sentencing guidelines. Under MCL 777.16d, resisting and obstructing a police officer in violation of MCL 750.81d(1) is a Class G felony. Similarly, under MCL 777.16x, resisting and obstructing a police officer in violation of MCL 750.479(2) is a Class G felony. Consequently, pursuant to MCL 777.19(3)(b), because resisting and obstructing a police officer is a Class G felony, the trial court was required to consider defendant's attempted resisting and obstructing a

police officer offenses as Class H felonies for purposes of scoring the sentencing guidelines. As such, the trial court correctly counted defendant's attempted resisting and obstructing offenses as felonious criminal activity in its OV 13 score determination.[2] Because defendant had three or more felony crimes against a person within a five-year period of the sentencing offense, including the sentencing offense itself, the trial court properly assessed defendant 25 points for OV 13.[3]

## II. OV 1 AND OV 2

Defendant argues in a Standard 4 brief[4] that the trial court erred by scoring points for OV 1 and OV 2 because the jury acquitted him of felony-firearm charges.

A trial court scores OV 1 for an offender's or multiple offenders' aggravated use of a weapon during the commission of a crime. *People v Morson*, 471 Mich 248, 256; 685 NW2d 203 (2004). MCL 777.31 governs OV 1 scoring and in relevant part provides:

---

[2] Defendant argues that the issue is "not whether the offense is a felony for purposes of scoring the guidelines for a sentencing offense, but rather, whether the act committed is itself felonious," as MCL 777.43 requires "felonious criminal activity." Thus, defendant argues, because misdemeanor activity is not felonious activity, and because MCL 777.43 requires the sentencing court to look at acts "without regard to whether the offense resulted in conviction," the trial court "may not infer felonious criminal activity that is not in the record." However, MCL 777.19(2) defines what is to be considered felonious activity involving attempted offenses for purposes of sentencing, so defendant's argument lacks merit. Although not binding, this Court in *People v Mosher*, unpublished opinion of the Court of Appeals, issued January 23, 2014 (Docket No. 312996), drew the same conclusion, which the trial court in the instant case found persuasive, as do we. In *Moser*, this Court also correctly refuted the defendant's argument that MCL 777.19 applies to sentencing offenses but is silent with regard to prior offenses. In so doing, this Court cited *People v Wright*, 483 Mich 1130 (2009) (remanding to the trial court for resentencing because defendant's prior conviction for attempted assault with intent to do great bodily harm was to be treated as a class E offense, according to MCL 777.19(3)(a), for purposes of scoring the guidelines).

[3] The trial court correctly excluded offenses committed outside the permissible five-year period set by MCL 777.43(2)(a), as well as defendant's conviction for cocaine possession, which was not a crime against a person. See MCL 777.13m. The trial court also correctly excluded one count of armed robbery that had been dismissed as part of his plea deal because the court had used it when scoring OV 12. See 777.43(2)(c) The trial court appropriately considered the sentencing offense, defendant's prior conviction for resisting and obstructing a police officer, and defendant's two attempted resisting and obstructing offenses when scoring OV 13 at 25 points.

[4] A "Standard 4" brief refers to a pro se brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

(1)   Offense variable 1 is aggravated use of a weapon.  Score offense variable 1 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c)   A firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon ………………………………… 15 points

(d)   The victim was touched by any other type of weapon …………………………………………...................................... 10 points

(e)   A weapon was displayed or implied ................................ 5 points

(f)   No aggravated use of a weapon occurred ……………........ 0 points

(2)   All of the following apply to scoring offense variable 1:

(a)   Count each person who was placed in danger of injury or loss of life as a victim.

(b)   In multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points.

(c)   Score 5 points if an offender used an object to suggest the presence of a weapon.

* * *

OV 2 is scored when an offender possessed or used a weapon during the commission of a crime, and points are assessed depending upon the lethal potential of the weapon.  *People v Young*, 276 Mich App 446, 451; 740 NW2d 347 (2007).  MCL 777.32 governs OV 2 scoring and in relevant part provides:

(1) Offense variable 2 is lethal potential of the weapon possessed or used.  Score offense variable 2 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(d) The offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon ................................................................. 5 points

(2) In multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points.

(3) As used in this section:

\* \* \*

(c) "Pistol", "rifle", or "shotgun" includes a revolver, semi-automatic pistol, rifle, shotgun, combination rifle and shotgun, or other firearm manufactured in or after 1898 that fires fixed ammunition, but does not include a fully automatic weapon or short-barreled shotgun or short-barreled rifle.

Each multiple-offender provision of these statutes states that if one offender is assessed points under the variable, "all offenders shall be assessed the same number of points." MCL 777.31(2)(b); MCL 777.32(2). In *Morson*, 471 Mich at 260, the Michigan Supreme Court held that the plain language of MCL 777.31(2)(b) "requires the sentencing court to assess the same number of points to multiple offenders." Therefore, trial courts have no scoring discretion in multiple offender cases.

In the instant case, the commission of the January 20, 2014 robbery involved multiple offenders, one of whom was defendant's codefendant, Phillips. The Michigan Department of Corrections provided the trial court a PSIR that scored OV 1 at 15 points and OV 2 at 5 points. In the New Conviction Update Report, the Department of Corrections explained that defendant's OV 1 and OV 2 scores were based on the fact that Phillips pleaded guilty to two counts of armed robbery arising out of the incident and had been assessed 15 points for OV 1 and 5 points for OV 2. Thus, the trial court had information that another offender involved in the commission of the robbery previously had been assessed points for OV 1 for the aggravated use of a firearm and points for OV 2 for possession or use of a firearm. Consequently, pursuant to *Morson*, the trial court properly assessed defendant the same amount of points for OV 1 and OV 2 as had been assessed Phillips, regardless of defendant's acquittal of the felony-firearm charges. Although the trial court did not state on the record that it calculated defendant's scores for OV 1 and OV 2 based on his codefendant's OV 1 and OV 2 scores, our Supreme Court's holding in *Morson* required it to do so; therefore, it cannot be held to have erred for so doing.

Even if the scoring decisions for Phillips did not bind the trial court, the court did not commit clear error in its factual determinations relevant to scoring OV 1 at 15 points and OV2 at 5 points, and a preponderance of the evidence supported the court's findings.[5] See *Hardy*, 494 Mich at 438. At defendant's sentencing, the trial court noted that it heard the evidence at trial, which it found credible, and was satisfied that a real firearm was pointed at or toward a victim. Each victim testified at trial that she saw masked men pointing guns at them. Each victim similarly described the guns' general physical appearances. Each felt that the robbers threatened them with the guns during the commission of the robbery, and testified that she feared for her

---

[5] A trial court is permitted to consider the facts underlying an acquittal in sentencing, *People v Parr*, 197 Mich App 41, 46; 494 NW2d 768 (1992), and need only find facts to support its scoring decisions by a preponderance of the evidence, *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). Thus, defendant's acquittal of the felony-firearm charges does not prohibit the trial court from scoring OVs 1 and 2.

life. Graham testified that she felt the weight and cold metal of one robber's gun on her skull. Graham and Mack each testified confidently that they recognized defendant as the lead gunman by his voice and apparel. Based on a de novo review of the record, we conclude that the facts, as found, are adequate to satisfy the trial court's scoring decisions for both OV 1 and OV 2. *Id*.

Because the trial court did not err in scoring OV 1 and OV2, we need not address defendant's argument that the trial court's minimum sentence calculation was incorrect and resulted in a disproportionate sentence. The trial court's minimum sentence was within the appropriate guidelines range, and thus, it is presumptively proportionate and must be affirmed. MCL 769.34(10); *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011); see also *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering