# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

WILLIAM RANDOLPH KING,

          Defendant-Appellant.

UNPUBLISHED
April 26, 2018

No. 335606
Wayne Circuit Court
LC No. 15-007703-01-FC

---

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct ("CSC-I") (sexual penetration during the commission of a felony), MCL 750.520b(1)(c), kidnapping, MCL 750.349, and third-degree criminal sexual conduct ("CSC-III") (sexual penetration with force or coercion), MCL 750.520d(1)(b). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 40 to 75 years' imprisonment for his CSC-I conviction and 20 to 40 years' imprisonment for his kidnapping and CSC-III convictions. We affirm.

## I. *BRADY*[1] VIOLATION

Defendant argues that a *Brady* violation occurred because the prosecution failed to promptly test a pubic hair that had been collected in a rape kit relating to a witness whose testimony was admitted pursuant to MRE 404(b). As noted below, the result of the testing had not been completed at the time of trial, and when completed, the pubic hair was found to not be from defendant. Defendant contends that had the testing been completed before trial, he could have better questioned the prior victim at trial and utilized the identified person from whom the hair came as a witness. We disagree.

We review due process claims, such as allegations of a *Brady* violation, de novo. *People v Stokes*, 312 Mich App 181, 189; 877 NW2d 752 (2015), vacated in part on other grounds 501 Mich 918 (2017). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

---

[1] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

-1-

irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, a defendant must prove (1) that the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). The test for materiality is whether in absence of the evidence, defendant received a fair trial, i.e., "a trial that resulted in a verdict worthy of confidence." *Id*. at 157.

Related to this issue, prior to trial, defendant asked the trial court to order the lab to complete DNA testing on a pubic hair that was found in the prior victim's underwear or vaginal opening during the rape kit collection. At that time, the prosecution had already submitted the hair for testing to the lab, but the testing had not yet been completed. Defense counsel acknowledged this and conceded that the prosecutor had not acted in bad faith—the order sought would only have compelled the lab to complete its work. Further, defendant's DNA was found inside the prior victim's vagina. Although the trial court questioned the relevancy of the test, which is understandable due to the prior victim's assertion that *two* men had assaulted her and that defendant's DNA already had been found in her, the trial court nonetheless ordered the lab to complete the testing.

Immediately before trial, the prosecution acknowledged that the testing was not then complete. The trial court ruled that it would proceed with trial, despite the results being unavailable. In the alternative, defendant moved to exclude the prior victim's testimony considering the results were not available; however, the trial court denied this request, acknowledging that the issue related to admissibility of the other acts had been previously decided. After trial and during sentencing, the prosecution provided defendant with the final results of the pubic hair testing, which identified it as belonging to a person other than defendant.

First, the prosecution did not suppress evidence, and defendant was not denied due process. It is undisputed that the prosecution did not possess any test results until *after* trial. As a result, it is clear that the prosecution did not possess and suppress any evidence that was favorable to defendant. At the time of trial, the prosecution had disclosed the existence of the pubic hair, which was all the prosecution had available to it. Moreover, there was no evidence that the prosecution engaged in any misconduct or bad faith by delaying having the hair tested. Indeed, defendant acknowledged at the time that the prosecution was not acting in bad faith. Accordingly, defendant's due-process challenge fails. See also *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003) ("Absent a showing of suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to test evidence to accord a defendant due process.").

Defendant has also failed to prove the second and third prongs of the *Brady* requirements—that the evidence was favorable to his defense and there was a reasonable probability that there would have been a different outcome had the evidence been presented. *Chenault*, 495 Mich at 150. Importantly, notwithstanding the additional contributor, defendant's

DNA was still found in the prior victim's vagina. The prior victim testified that two men had raped her, so the identification of an additional subject only served to corroborate her testimony. Defendant merely contends that he may have been able to attack the prior victim's credibility during cross-examination had he had the information; however, as the prior victim had already established a second party to the rape, we are unable to glean any additional facts that would have allowed her to be further challenged had the evidence been available to defendant. Lastly, defendant contends that he could have "*possibly* uncovered information consistent with [his] defense" had he been provided with the results. (Emphasis added.) This general statement does not meet his burden to demonstrate that it was reasonably probable that, had he had the results, the outcome of the trial would have been different. Accordingly, we hold that defendant is not entitled to any relief.

## II. JURY INSTRUCTION

Defendant argues that because the prosecution failed to test and provide the results of all of the DNA evidence from the prior victim's rape kit, the trial court erred when it failed to provide a negative inference jury instruction. We disagree. "Jury instructions that involve questions of law are also reviewed de novo." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, "a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id*.

A criminal defendant has the right to have a properly instructed jury consider the evidence against him. *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014), vacated in part on other grounds 498 Mich 914 (2015). "This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred." *Id*. "The jury instructions must include all elements of the charged offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Id*.

"Michigan courts have long recognized that when material evidence in control of a party is not produced at trial, the opposing party is entitled to an adverse inference instruction." *People v Cress*, 250 Mich App 110, 157 n 27; 645 NW2d 669 (2002), rev'd on other grounds 468 Mich 678 (2003). An adverse inference instruction allows the jury to infer that the evidence, although not presented at trial, would have been *not* favorable to the party who was supposed to present the evidence. See, e.g., M Crim JI 5.12 (instruction that permits the jury to infer that a missing witness would have testified unfavorably to the prosecution when the prosecution was responsible for producing the witness). However, such an instruction is only permitted when the prosecutor acts in bad faith. *Cress*, 250 Mich App at 157-158; *People v Davis*, 199 Mich App 502, 514-15; 503 NW2d 457 (1993), overruled on other grounds by *People v Grissom*, 492 Mich 296 (2012). As stated above, there was no evidence to show that the prosecution acted in bad faith when it did not produce the testing results by the time of trial. Accordingly, the trial court did not err when it declined to provide the adverse inference instruction to the jury.

## III. OFFENSE VARIABLE SCORING

Defendant contends that he is entitled to resentencing because the trial court erred when it scored offense variable ("OV") 7 and OV 10 at 50 points and 15 points, respectively.

"[T]he proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

## A. OV 7

The trial court scored OV 7, which addresses aggravated physical abuse, at 50 points. A trial court properly scores 50 points for OV 7 when the "victim was treated with sadism, torture, or excessive brutality or *conduct designed to substantially increase the fear and anxiety a victim suffered during the offense*." MCL 777.37(1)(a) (emphasis added). Conversely, zero points are properly scored when "[n]o victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(b).

"The relevant inquiries [when scoring OV 7] are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443-444. Here, the trial court did not err when it found that defendant treated the victim with conduct that was intended to substantially increase her anxiety and fear. The trial court agreed with the prosecution that defendant told the victim that once he was done raping her, the rest of the men from the van would get their "turn" to also rape her.[2] This finding is not clearly erroneous, as the victim testified that this exchange happened, which she also described as causing her to "panic." Further, this conduct went beyond the minimum necessary to commit the offense of CSC-I. Accordingly, because the preponderance of the evidence showed that defendant intended to substantially increase the victim's anxiety and fear, the trial court did not err when it scored OV 7 at 50 points.

## B. OV 10

OV 10 is scored for the exploitation of a vulnerable victim. The factors to consider when determining vulnerability include the following:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender

---

[2] As we describe below in our discussion of OV 10, the trial court did not make any explicit findings, but because the prosecution presented its argument that 50 points was proper due to defendant's comment about allowing the victim to be raped by several other men once he was done with her, it is clear that the trial court was agreeing with and adopting the prosecution's position.

exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. [*People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008).]

Points may be assessed under this OV when the exploitive conduct was directed against a vulnerable victim and the vulnerability was readily apparent, in that the victim was susceptible to injury, physical restraint, persuasion, or temptation. *Id.* at 157-158. But if an offender did not exploit a victim's vulnerability, as defendant suggests is the case here, then zero points are properly scored for OV 10. MCL 777.40(1)(d). In any event, OV 10 is not to be scored based on the conduct of a co-offender. *People v Gloster*, 499 Mich 199, 204-205; 880 NW2d 776 (2016).

The trial court scored OV 10 at 15 points, which is proper when "[p]redatory conduct was involved." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). Unfortunately, the trial court did not make any factual findings related to the scoring of this OV. Instead, the entirety of the discussion on this scoring is as follows:

> *[The Prosecutor]:* OV 10 is exploitation of a vulnerable victim, and I'm arguing that it be scored at 15 points for predatory conduct [instead of the zero points that was noted in the presentence investigation report].
>
> *THE COURT:* [Defense counsel]?
>
> *[Defense Counsel]:* I think it's scored properly at zero, Your Honor.
>
> *THE COURT:* I think it was predatory conduct. I'll score it 15 over objection.

Because the trial court did not make any specific factual findings regarding what defendant purportedly did that constituted predatory conduct, it is impossible for this Court to review those findings. However, we need not remand for the trial court to enunciate its rationale or its underlying findings of its scoring of this OV because, assuming the 15 points were improperly scored, defendant still would not be entitled to resentencing. Reducing the score of OV 10 to zero points would reduce defendant's total OV score from 125 to 110 points. But this change does not alter the total OV level—it remains at OV level VI (100+ points) in the applicable sentencing grid. See MCL 777.62. Accordingly, because any scoring error on this OV would not alter the appropriate guidelines range, resentencing is not required. MCL 769.34(10); *People v Bowling*, 299 Mich App 552, 563; 830 NW2d 800 (2013), citing *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## IV. CRUEL OR UNUSUAL PUNISHMENT

Defendant contends that his sentence is cruel or unusual because the term exceeds his natural life expectancy, and thus, the sentence equates to a life sentence without parole, and the trial court failed to consider mitigating factors. We disagree.

A defendant must "advance a claim below that his sentences were unconstitutionally cruel or unusual" to be preserved. *Id.* at 557. Defendant failed to object during sentencing that his sentence was cruel or unusual; therefore, the issue is unpreserved. See *id.* Accordingly, we review this unpreserved constitutional issue for plain error affecting defendant's substantial rights. *Id.*

The United States Constitution prohibits cruel *and* unusual punishment, US Const Am VIII, while the Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1 § 16. Thus, Michigan's Constitution affords more protection than the United States Constitution. See *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). In other words, "[i]f a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Id.* (quotation marks and citation omitted). "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *Bowling*, 299 Mich App at 557-558. Explained another way, a sentence constitutes cruel or unusual punishment when it is grossly disproportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992); *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Further, "a sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (citations omitted).

Here, defendant was sentenced to a minimum term of imprisonment of 40 years, or 480 months. His guidelines range for his minimum sentence was 270 to 900 months. Thus, defendant was sentenced within the guidelines range, which makes his sentence presumptively proportionate and not cruel or unusual. Nothing in the record negates the presumption of proportionality, as defendant's sentence was proportionate to the seriousness of circumstances surrounding the offense and the offender.

Defendant contends that his sentence is cruel or unusual because he will likely die before being eligible for parole. However, defendant incorrectly assumes that he is entitled to parole. See *People v Merriweather*, 447 Mich 799, 808; 527 NW2d 460 (1994) (stating that Michigan law does not support the contention that all defendants are entitled to parole); *Bowling*, 299 Mich App at 558. Furthermore, a defendant's age is insufficient to overcome the presumptive proportionality of his sentences, especially when considering a defendant's "lengthy criminal record and the gravity of his offenses." *Bowling*, 299 Mich App at 558-559. Here, there is no question that the offense of CSC-I "is a serious offense." *People v Fultz*, 453 Mich 937; 554 NW2d 725 (1996). Considering this particular case, the offense was horrific. Defendant repeatedly sexually assaulted the victim over many hours, keeping her confined in his van. He told the victim that after he assaulted her one more time, he was going to allow the other men to get their "turn," which reasonably made the victim believe she was going to be gang raped. And considering the offender, defendant had a very extensive history, including 15 convictions, of which at least nine were felonies, including assault with a deadly weapon, carrying a concealed weapon, and a federal weapons conviction.

Moreover, we note that defendant also has failed to show that his sentences are cruel or unusual compared to the penalties imposed for other crimes in this state or for the same crimes in other states. *Bowling*, 299 Mich App at 559, citing *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011); see also *People v Masroor*, 313 Mich App 358, 400; 880 NW2d 812 (2015), aff'd in part and rev'd in part on other grounds *People v Steanhouse*, 500 Mich 453 (2017).

Defendant also contends that in sentencing him, the trial court failed to consider mitigating factors including defendant's mental health history and the fact that defendant did not use a firearm or threats when assaulting the victim. However, defendant has failed to cite to any authority that requires a court to consider mitigating factors at sentencing. Regardless, a review of the record shows that the trial court was aware of and considered these mitigating factors, among others. Specifically, the trial court and the parties addressed defendant's presentence investigation report at sentencing. The report indicated that defendant was diagnosed with bipolar disorder and had additional mental health problems. Additionally, the trial court presided over the trial and heard all the testimony. As a result, the trial court was aware of defendant's mental health problems from the presentence investigation report and was well aware from having presided over the trial that defendant did not use a weapon during the commission of the crime. Therefore, defendant has not demonstrated any plain error.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Jonathan Tukel