*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARTIN GRAHAM,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 345144
Wayne Circuit Court
LC No. 18-002285-01-FC

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

## I. BACKGROUND

Defendant's convictions result from his nonfatal shooting of Davon Panle. Defendant admitted that he shot Panle, but claimed that he did so out of self-defense after Panle and Panle's cousin, Dejuan Page attacked defendant. According to defendant, he was walking to his home when he noticed Panle and Page following behind him in a car. Defendant testified that Panle and Page jumped out of the car and challenged him to a fight and defendant swung his fist at Panle first. A fistfight ensued and, according to defendant, during the fight both Panle and Page struck defendant in the head. Defendant testified that he and Panle fell into the snow and defendant's handgun fell out of his waist holster.[1] Defendant claimed that he retrieved the weapon and shot Panle one time while Panle was on top of him. Defendant reasoned that he was able to fire only the bullet that was in the chamber of the handgun because the weapon's magazine had become dislodged during the fight. Defendant testified that he suffered a blood clot in his eye, a knot on the top of his head, a damaged lip, and minor bruising during the fight.

---

[1] Defendant had a concealed pistol license and permission to carry the handgun.

Defendant stated that he believed Panle and Page were trying to kill him because he had braces and his mouth could not handle getting struck in the head and face by both Panle and Page.

For their part, Panle and Page testified that the fight unfolded differently. According to the cousins, they were in a vehicle about to leave their shared residence when defendant confronted Panle about Instagram messages between Panle and defendant's girlfriend. Page drove away before the confrontation could turn physical, but a short while later Panle asked Page to turn around so that he could retrieve his cellular phone from their house. Panle testified that defendant was still in the area when he exited the vehicle. Defendant challenged Panle to a fight and threw the first punch. Eventually defendant and Panle ended up falling to the ground. Page tried to break up the fight by pushing Panle off of defendant and holding defendant back. Page let go of defendant after seeing that defendant was holding a gun and, at that point, defendant fired two shots, one of which hit Panle in his groin area.

Panle was treated at Henry Ford Hospital. Dr. Christopher Clark, the supervising emergency-room doctor at Henry Ford, testified that Panle was in "critical condition" when Panle arrived at the emergency room and that he only spoke to Panle briefly because of the "critical state" Panle was in. According to Dr. Clarke, Panle was treated in the "critical-care resuscitation bay area" of the emergency department for approximately four hours, before undergoing orthopedic surgery.

Defendant was charged with assault with intent to commit murder, MCL 750.83, and felony firearm. The jury found defendant guilty of the lesser crime of AWIGBH and felony firearm. The trial court sentenced defendant to prison terms of 23 months to 10 years for the AWIGBH conviction and 2 years for the felony-firearm conviction. This appeal followed.

II. ANALYSIS

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was unconstitutionally denied the effective assistance of counsel because his counsel failed to admit the handgun's magazine into evidence. A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Defendant testified at trial that he only fired one shot at Panle because the magazine dislodged from his gun. Defendant argues that his counsel should have admitted the magazine into evidence to corroborate defendant's testimony and that corroboration that he fired only one shot, as opposed to two, would have made it more likely that he acted in self-defense. We disagree. Defendant's argument appears to rest on his belief that the jury could "test" the gun and magazine and determine whether the magazine functioned properly. Yet, had the magazine been introduced as evidence, the jury would not have been able to handle it as defendant assumes. Rather, the trial court would have, as was done with the gun, instructed an officer to display the magazine for the jury to observe from the jury box. Defendant does not argue that

-2-

the magazine had any visible defects that would indicate that it would dislodge from the gun. Similarly, defendant does not argue that his counsel should have retained an expert to test the magazine. Indeed, defendant has offered no evidence, outside of defendant's own testimony—which the jury already heard—from which this Court could conclude that the handgun's magazine was functioning improperly. Because defendant has failed to explain to this Court how introducing the magazine into evidence could have corroborated his testimony that he only shot once, defendant has failed to establish the factual predicate for his claim. *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003). Accordingly, defendant's claim of ineffective assistance of counsel is without merit.

## B. OV SCORING

Next, defendant argues that the trial court erred by assessing 25 points for offense variable (OV) 3. The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 3 scores for the victim's physical injury. MCL 777.33. The trial court properly assesses 25 points under OV 3 when a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). "In scoring OV 3, the focus is not on the defendant's actions; rather, OV 3 assesses whether a victim's injuries were life-threatening." *People v Chaney*, ___ Mich App ___; ___; ___ NW2d ___ (2019) (Docket No. 341723); slip op at 1 (internal citation, quotation marks, and emphasis omitted). To give effect to the ordinary meaning of "life threatening," there must be "some evidence indicating that the injuries were, in normal course, potentially fatal." *Id*. at ___; slip op at 3.

Defendant argues that the prosecution presented insufficient evidence for the trial court to conclude that Panle's injuries were life-threatening. We disagree. Dr. Clarke testified that Panle was placed in the "critical care resuscitation bay area" because of his injuries and that the resuscitation bay "is where . . . patients come in with life threatening injuries and we stabilize them." According to Dr. Clarke, his initial conversation with Panle in the hospital was very brief because of Panle's "critical state." Dr. Clark also testified that "any gun shot injury is potentially life threatening" especially when it occurs in a "critical area" of the body. Thus, on this record, we are not left with a definite and firm conviction that the trial court erred by finding that Panle

-3-

suffered a life-threatening injury. Accordingly, we conclude that the trial court did not clearly err by scoring OV 3 at 25 points.[2]

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher

---

[2] Because we conclude that the trial court's finding of a life-threatening injury was not clearly erroneous, we need not address the trial court's alternative finding that the victim suffered a permanent incapacitating injury.